AIR-WAY BRANCHES, INC., A CORPORATION OF THE STATE OF OHIO, PLAINTIFF-APPELLANT, v. BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, ET ALS., DEFENDANTS-RESPONDENTS.

Argued October 27, 1952—Decided December 1, 1952.

610

*Mr. Robert K. Bell* argued the cause for the appellant.

*Mr. William C. Nowels,* Deputy Attorney-General, argued the cause for the respondent Division of Employment Security (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney).

*Mr. Clarence F. McGovern* argued the cause for the respondent Board of Review.

The opinion of the court was delivered by

JACOBS, J.   This is an appeal, certified by this court on its own motion, from a final decision of the Board of Review, Division of Employment Security.

Air-Way Branches, Inc. is an Ohio corporation engaged in the sale and distribution of vacuum cleaners.   In 1937 it filed its Initial Status Report under the New Jersey Unemployment Compensation Law (*R. S.* 43:21–1 *et seq.*) with the Supervisor of Status Determination, Division of Employment Security, and listed its address as 2101 Auburn Avenue, Toledo, Ohio.   Its registered agent designated under the General Corporation Law (*R. S.* 14:15–3) is the Corporation Trust Company, 15 Exchange Place, Jersey City, New Jersey, and it maintains a branch office at 17 William Street,

Newark, New Jersey. It also maintains a branch office at Philadelphia, Pa., where the claimant George Messick was hired to sell vacuum cleaners. At the time of his hiring Messick signed Air-Way's customary "Dealer's Agreement" which stated that Messick would not be an agent or employee but would be an "independent merchant" and that Air-Way would supply his requirements of Air-Way products as therein provided. Air-Way maintains a warehouse at 115 Haddon Avenue, Westmont, N. J., and the testimony indicates that it is under the charge of John Buhrmann, Division Manager, who is responsible to the Philadelphia office and whose function is to store Air-Way vacuum cleaners and incidentals and furnish them to "dealers," including Messick, and receive their customers' contracts for transmission to the Philadelphia office. The testimony indicates further that Buhrmann has no authority whatever in unemployment compensation matters and that, apart from the instant case, all mail from the Division of Employment Security has been sent directly to Air-Way's home office address, 2101 Auburn Avenue, Toledo, Ohio.

On January 6, 1950 Messick filed a claim with the Bureau of Disability Benefits, Division of Employment Security. He named Air-Way as employer and set forth its address as 115 Haddon Avenue, Westmont, N. J. After the claim was received it was stamped with Air-Way's account number previously issued by the Supervisor of Status Determination, but its Toledo home office address, properly on file with the Supervisor, was omitted. On January 11, 1950 the Chief of State Plan Disability Benefits sent form DS-6 to Air-Way, 115 Haddon Avenue, Westmont, N. J. This was not returned until January 31, 1950; it had not been forwarded to Philadelphia or Toledo but had been signed without any previous authorization by John L. Buhrmann "Branch Mngr." beneath the statement that there was "No reason" to believe that the claim was not proper. In the meantime and without further proof (cf. L. 1952, c. 187, p. 624) the Examining Unit of the Bureau determined, on

January 26, 1950, that Messick was eligible for benefits. On January 31, 1950 a notice of such determination was mailed to Air-Way, 115 Haddon Avenue, Westmont, N. J. However, on February 6, 1950 the Bureau wrote to Air-Way, Westmont, inquiring about a discrepancy between the last day of work set forth on Messick's claim (form DS-1) and that set forth on form DS-6; this letter stated that "Any action on this claim will be pended until we hear from you." On February 17, 1950 an internal memorandum was issued within the Bureau which stated that "In view of the employer's failure to answer our letter of February 6 claim is to be processed on basis of information given on DS-1." In the meantime the January 31, 1950 notice of determination had been forwarded to Air-Way's Philadelphia office where it arrived on February 15, 1950; it was then forwarded to the Toledo office where it arrived on February 20, 1950.

On the following day, February 21, 1950, Air-Way mailed a letter protesting the determination that Messick was eligible for benefits and this was received by the Appeal Tribunal (*R. S.* 43:21–6) on February 23, 1950. On March 1, 1950 the clerk of the Appeal Tribunal advised Air-Way that its appeal had been "accepted" and would be acted upon as soon as possible. Thereafter hearings were duly held and on November 29, 1950 examiner Miller filed an opinion embodying findings of fact and his decision. He expressed the view that under all of the evidence Messick was an employee of Air-Way within the contemplation of *R. S.* 43:21–19 and that he was entitled to the benefits paid to him by the Chief of State Plan Disability Benefits. Air-Way appealed from examiner Miller's decision to the Board of Review (*R. S.* 43:21–6) which set it aside and remanded the cause to the Appeal Tribunal for "rehearing and a new decision." On August 2, 1951 examiner Marder rendered a new decision for the Appeal Tribunal which declared that the agreement between Air-Way and Messick created a vendor-vendee relationship rather than one of employment, and that

Messick was consequently ineligible for benefits. During the hearing before examiner Marder the issue as to whether Air-Way's original appeal had been filed within the seven-day period permitted by *R. S.* 43:21–6 was raised for the first time; it seems to us that, in simple fairness, the company should have been confronted with that issue long before it had expended its efforts through two completed appeals. *Cf. United States v. L. A. Tucker Lines Co.*, 344 *U. S.* 33, 73 *S. Ct.* 67, 97 *L. Ed.* —— (1952) where Justice Jackson in dealing with a contention, raised for the first time in court, that the Commission's action was invalid for want of jurisdiction because its examiner had not been appointed pursuant to the Administrative Procedure Act, pointedly said:

"The issue is clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits and can prevail only from technical compulsion irrespective of considerations of practical justice."

Appeal to the Board of Review from examiner Marder's decision was taken by the Chief of State Plan Disability Benefits; on September 11, 1951 the Board of Review reversed the decision on the sole ground that Air-Way had not taken its original appeal within the time allowed; it made no final determination on the meritorious issue as to whether Messick was an eligible employee entitled to benefits under the act. On Air-Way's present appeal from the decision of the Board of Review, the parties have not briefed or argued the ultimate meritorious issue. *Cf.* Wolfe, Determination of Employer-Employee Relationships in Social Legislation, 41 *Col. L. Rev.* 1015 (1941); *United States v. Silk*, 331 *U. S.* 704, 67 *S. Ct.* 1463, 91 *L. Ed.* 1757 (1947); *The Texas Co. v. N. J. Unemployment Compensation Commission*, 132 *N. J. L.* 362 (*Sup. Ct.* 1945), affirmed 134 *N. J. L.* 614 (*E. & A.* 1946); *Singer Sewing Machine Co. v. N. J. Unemployment Compensation Commission*, 128 *N. J. L.* 611 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 173 (*E. & A.* 1943).

They have simply presented to us for determination the question of whether Air-Way was barred from administrative review of the initial determination of eligibility; we think that it was not.

█ The Examining Unit's original determination of eligibility was noticed on January 31. Before the time for appeal had elapsed the Unit made inquiry of Air-Way and stated that any action on the Messick claim would "be pended until we hear from you." On February 17 the Unit decided to process the claim on the basis of the information furnished by the claimant. Under the circumstances we believe that the position may properly be taken that the claim had been opened for reconsideration and redetermination. Our courts have given firm recognition to the enlightened view that, in appropriate situations, administrative agencies may rightly advance the interests of justice by exercising powers, comparable to those possessed by courts, of reopening their determinations for further consideration and disposition. See *McFeely v. Board of Pension Commissioners*, 1 *N. J.* 212, 217 (1948); *Handlon v. Town of Belleville*, 4 *N. J.* 99, 106 (1950); *Stone v. Dugan Bros. of N. J.*, 1 *N. J. Super.* 13, 17 (*App. Div.* 1948); *Central Home Trust Co. v. Gough*, 5 *N. J. Super.* 295, 301 (*App. Div.* 1949); *Adolph v. Elastic Stop Nut Corp., America*, 18 *N. J. Super.* 543, 546 (*App. Div.* 1952). *Cf.* 1 *Vom Baur, Federal Administrative Law* (1942), *p.* 162. In the *Handlon* case Justice Heher said:

"Barring statutory regulation, the power [to reconsider] may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law. But there must be reasonable diligence. The denial to such tribunals of the authority to correct error and injustice and to revise its judgments for good and sufficient cause would run counter to the public interest. The function cannot be denied except by legislative fiat; and there is none such here."

Assuming that the Messick claim was properly reopened on February 6 and not finally disposed of by the Examining

Unit until February 17, the appeal taken shortly thereafter would clearly be within time.

■ However, apart from the foregoing, we are satisfied that the notice of January 31 was insufficient and that Air-Way's appeal, filed immediately after receipt of the notice at its Toledo office, was not untimely. The Board of Review took the view that the notice was properly mailed to the Westmont address as Air-Way's "last known address" and that its time for appeal expired within seven days thereafter. Under the' evidence we consider this to be erroneous. The Westmont address was simply a warehouse and Buhrmann, the subordinate in charge, had no authority to accept or acknowledge service of legal notices. *Cf. I. Rokeach & Sons, Inc. v. Krichman,* 125 *N. J. L.* 477 (*Sup. Ct.* 1940); *Cohen v. American Window Glass Co.,* 41 *F. Supp.* 48 (*D. C. S. D. N. Y.* 1941), modified 126 *F. 2d* 111 (*C. C. A.* 2, 1942). Service upon him would presumably be insufficient in ordinary civil actions (*Rule* 3:4-4); its insufficiency appears more evident where, as here, we are concerned with statutory notice by mail from the Division to an employer whose formal registration with the Division specifically set forth its address as 2101 Auburn Avenue, Toledo, Ohio, and no change in that address was ever made. That would seem to be the address generally contemplated by the statutory reference. The time limitation in the statute though short may be said to be fair; it would, however, be rendered wholly unjust if notice to an unauthorized subordinate employee at an outlying warehouse were sufficient to start the period of limitation.

Reversed and remanded to the Board of Review for determination on the merits.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—None.