PAT CICALA *v.* ADMINISTRATOR, UNEMPLOYMENT COMPENSATION ACT

HOUSE, THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued May 4—decided June 25, 1971

*Carl D. Eisenman,* special assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellant (defendant).

*Francis R. Mercier,* for the appellee (plaintiff).

RYAN, J. The plaintiff filed for and received unemployment compensation benefits covering the period from June 13, 1965, through November 27, 1965. On July 5, 1966, the administrator notified the plaintiff that the benefits paid to him during that period were improperly received and, therefore, the plaintiff owed the unemployment compensation fund the sum of $1272. From this ruling the plaintiff appealed to the unemployment compensation commissioner on July 7, 1966. The appeal was heard on January 30, 1967, and on February 14, 1967, the commissioner reversed the decision of the administrator. On February 27, 1967, the matter was opened on motion of the administrator. Following a delay, apparently due to the illness of the plaintiff, a further hearing was held on March 25,

1968. On the basis of new evidence produced at this hearing, the commissioner decided on June 7, 1968, that the plaintiff was not eligible for the benefits he received for the period from June 13, 1965, through November 27, 1965; that the decision of the administrator denying such benefits and ordering the plaintiff to reimburse the fund was correct and that the ruling of the administrator should be affirmed. The plaintiff appealed to the Superior Court which sustained his appeal. The defendant administrator has appealed to this court.

The commissioner found the following facts.: In his decision letter of July 5, 1966, the defendant ruled that during the period in question the plaintiff was fully employed by Toroid Trans Electronics Company, hereinafter referred to as Toroid, a corporation in which he was an officer and principal stockholder. The plaintiff in this period traveled all over the country attempting to seek work for himself and, also, to expand the business of Toroid. Substantial promotional work was done for Toroid, which made periodic payments to the plaintiff to cover his traveling expenses, meals and lodging which were not less than $130 nor more than $160 per week. At the end of 1965, the plaintiff, who had become an owner of 80 percent of the stock of Toroid, became employed by it at a salary of $175 per week. The commissioner held that while the plaintiff did not receive a salary as such, he did receive payment in the form of expenses which allowed him to travel and enrich a corporation in which he was the principal owner and that such an arrangement was in effect self-employment.

In sustaining the plaintiff's appeal, the trial court found that the action taken by the defendant by his letter of July 5, 1966, was not justified by the provi-

sions of § 31-243 of the General Statutes and that the commissioner did not have the power to open his first decision for the plaintiff because under the provisions of § 31-248 of the General Statutes no such action is permissible. These conclusions form the main issues in this appeal.

It is the claim of the defendant that § 31-273 (b) of the General Statutes rather than § 31-243 applies to his action disallowing the benefits in question, and that under the provisions of that statute his actions were proper. "There is a presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law. *State* v. *Jordan,* 142 Conn. 375, 378, 114 A.2d 694; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 657, 103 A.2d 535; *Coombs* v. *Darling,* 116 Conn. 643, 646, 166 A. 70." *Hurlbut* v. *Lemelin,* 155 Conn. 68, 74, 230 A.2d 36. If the statutes appear to be repugnant, they are to be construed, if that is reasonably possible, so that both are operative. *Sloane* v. *Waterbury,* 150 Conn. 24, 29, 183 A.2d 839; *Danbury Rubber Co.* v. *Local 402,* 145 Conn. 53, 57, 138 A.2d 783. To accomplish this, we must give effect to the expressed intention of the legislature, which is determined by the words employed to make that intention manifest. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785.

The predecessor of § 31-243 (Public Acts, Spec. Sess. 1936, c. 2 § 8) was enacted in 1936 and became § 1341e (d) of the 1939 Cumulative Supplement. Section 1341e contained ten subsections each of which dealt with claim procedure. The language of § 1341e (d) (now General Statutes § 31-243) has never been changed. While the statute

gives the administrator continuous jurisdiction over benefits for a period of six months, its provisions do restrict what actions may be taken by him. As a condition precedent to a review of an award of benefits or denial of a claim therefor the administrator is permitted "on the ground of a change in conditions" to "review an award of benefits or the denial of a claim therefor, in accordance with the procedure prescribed in respect to claims, and may issue a new decision, which may award, terminate, continue, increase or decrease such benefits." There is no suggestion in the record of any change of conditions as required by the statute nor does the administrator make any such claim. The statute provides also that any new decision shall not affect any benefits previously paid under the authority of the prior order. The statute has no application to the factual situation in the present case. It is clear that in § 31-243 the legislature was concerned with a later review of the original decision of the administrator. *Wyka* v. *Colt's Patent Fire Arms Mfg. Co.*, 129 Conn. 71, 75, 26 A.2d 465. It authorized modification based on changed conditions occurring after that decision was made and was not intended to apply in cases where the administrator seeks to recover benefits paid to one not entitled to receive them.

Section 31-273 provides penalties, both criminal and civil, for the improper receipt of benefits by any person and outlines the procedures to be followed. We are concerned in the present case with § 31-273 (b), the first and second sentences of which are as follows: "Any person who, by reason of nondisclosure or misrepresentation by him or by another of a material fact, whether or not such nondisclosure or misrepresentation was intentional or fraudulent, has received any sum as benefits under

this chapter while any condition for the receipt of benefits imposed by this chapter was not fulfilled in his case, or while he was disqualified from receiving benefits, and any person who has received a greater amount of benefits than was due him under this chapter, shall be liable to repay to the administrator for the unemployment compensation fund a sum equal to the amount so received by him or so overpaid to him, and such sum shall be collectible in the manner provided in section 31-266 for the collection of past due contributions. Any person who, through error, has received any sum as benefits under this chapter while any condition for the receipt of benefits imposed by this chapter was not fulfilled in his case, or while he was disqualified from receiving benefits, and any person who has received a greater amount of benefits than was due him under this chapter, shall be liable to repay to the administrator for the unemployment compensation fund a sum equal to the amount so received by him or so overpaid to him, provided such error has been discovered and brought to his attention within one year of the date of receipt of such benefits." The first sentence concerns any person who has received benefits by reason of the nondisclosure or the misrepresentation of a material fact, and has no application to the factual situation presented in this case in view of the fact that the commissioner made no specific finding of nondisclosure or misrepresentation. The second sentence was not part of the original public act adopted in 1936 but was added by a later amendment. It provides for reimbursement of the unemployment compensation fund by the recipient of benefits received through error (1) while any condition for the receipt of benefits imposed by the unemployment compensation act was not fulfilled

in his case; (2) or while he was disqualified from receiving benefits; (3) and when he has received more than was due him; provided, such error is discovered and brought to his attention by the administrator within one year of the receipt of such benefits. The commissioner concluded that the plaintiff was disqualified from receiving benefits under the provisions of § 31-228 because he received remuneration from Toroid and was actually self-employed. Section 31-273 (b) further provides that following a determination by the administrator that any person is liable to repay benefits received, an appeal may be taken to an unemployment compensation commissioner in the manner provided in § 31-242 of the General Statutes. It was this section which authorized the plaintiff's appeal.

Sections 31-243 and 31-273 (b) are not in conflict. Section 31-243 is concerned with a modification of the administrator's original decision on the ground of a change in conditions occurring within six months after that decision was made and specifically prohibits any retroactive effect as to benefits previously paid. Section 31-273 (b) empowers the administrator to act to preserve and secure the financial stability of the unemployment compensation fund by setting aside a payment of benefits to a person found disqualified or otherwise not entitled to such benefits and ordering a reimbursement of the fund as he did in this case.

The plaintiff urges that the commissioner was not authorized to open his decision for the plaintiff rendered February 14, 1967. Section 31-248 of the General Statutes provides that "[a]ny decision of a commissioner in the absence of an appeal therefrom, as herein provided, shall become final on the fifteenth day after the date of its rendition." The

trial court held that this language expressly prohibits the commissioner from opening a prior decision. We find no express prohibition of an opening by the commissioner. An unemployment compensation commissioner is an administrative officer. *Bartlett* v. *Administrator,* 142 Conn. 497, 505, 115 A.2d 671. The authorities on whether an administrative body or officer may grant a rehearing, in the absence of a specific grant of such authority by statute, are divided. 2 Am. Jur. 2d, Administrative Law, § 522; note, 73 A.L.R.2d 939, 942. Most of the authorities cited deal with a situation wherein an agency seeks to open a decision which had become final. In such cases we have held many times that an administrative tribunal is not permitted to reverse itself unless there has been a material change of circumstances. *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 111, 248 A.2d 922; *Consiglio* v. *Board of Zoning Appeals,* 153 Conn. 433, 438, 217 A.2d 64; *Mynyk* v. *Board of Zoning Appeals,* 151 Conn. 34, 37, 193 A.2d 519. "It is well settled that while an administrative officer or board may review a decision and revoke action once duly taken, it should not ordinarily do so; otherwise there would be no finality to the proceeding and the result would be subject to change at the whim of the officer or board or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence. *Rommell* v. *Walsh,* 127 Conn. 272, 276, 15 Atl. (2) 6. This is a wholesome and salutary rule but is by no means inflexible." *Middlesex Theatre, Inc.* v. *Hickey,* 128 Conn. 20, 22, 20 A.2d 412. Here, the question is whether an administrative officer is authorized, between the time his decision is rendered and the time it becomes final, to open that decision and reverse it. "The need for an opportunity for

correction of errors, change of mind, or obtaining more adequate factual grounds for a decision is no less present in the case of a decision of . . . [an administrative officer] than in the case of a judgment of a Court. The mere filing of a decision confers nothing in the nature of a vested right." *Lyons* v. *Delaware Liquor Commission,* 44 Del. 304, 318, 58 A.2d 889; see *Air-way Branches, Inc.* v. *Board of Review,* 10 N.J. 609, 614, 92 A.2d 771. In *Dylag* v. *Brennan,* 128 Conn. 304, 306, 22 A.2d 635, the plaintiff moved to open the decision of the liquor control commission revoking his license. This court said: "The motion to open the decision was evidently not one intended to obtain a new trial but was for the purpose of giving the plaintiff an opportunity to offer further evidence in the pending proceeding, and was so treated by him and by the commission. Whatever might be the situation in a court, such a procedure cannot be held improper before an administrative commission. The final decision of the commission could properly be based upon all the testimony, that given at the first hearing as well as that offered in connection with the motion to re-open the decision." In the case at bar the decision of the commissioner could not become final until the appeal time had elapsed. This did not occur. No vested rights intervened and the obvious purpose of the motion to open was not to obtain a new trial but to offer additional evidence to the end that substantial justice might be accomplished. Under these circumstances we cannot say that the granting of the motion to open was erroneous.

There is nothing in the record to support the plaintiff's claim that he received no notice of the motion of the defendant to open the decision of the commissioner until he was notified by the commis-

sioner that the case had been opened on February 27, 1967. Furthermore, the plaintiff, with his counsel, was present at the hearing of March 25, 1968, and had adequate opportunity to present his objections. In any event, the plaintiff failed to pursue any such claim in his brief.

Since the one-year Statute of Limitations provided in § 31-273 (b) is applicable to the facts of this case, the conclusion of the commissioner that the plaintiff must reimburse the unemployment compensation fund in the sum of $1272 must be modified. The date of the administrator's decision notifying the plaintiff was July 5, 1966. Obviously, any benefits received by the plaintiff prior to July 5, 1965, must be deducted from that sum. The amount of such payments cannot be determined from the record.

There is error, the judgment is set aside and the case is remanded for the rendition of a judgment returning it to the commissioner to be proceeded with in accordance with this opinion.

In this opinion the other judges concurred.