168 N.J. Super. 301 (1979)
402 A.2d 988
DIANA G. CASTELLUCCI, PLAINTIFF-APPELLANT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND XEROX CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1979.
Decided May 21, 1979.
*302 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. V. Richard Ferreri argued the cause for appellant (Messrs. Moss, Thatcher, Moss & McNeill, attorneys).
Mr. Michael R. Clancy, Deputy Attorney General, argued the cause for respondent Board of Review (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. Michael S. Bokar, Deputy Attorney General, of counsel and on the brief).
*303 Mr. John Dolan Harrington argued the cause for respondent Xerox Corporation (Messrs. Winne, Banta, Rizzi & Harrington, attorneys; Mr. Donald A. Klein, on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
In this matter in which the appeal is from a determination of the Board of Review (Board), Department of Labor and Industry, affirming a decision of the Appeal Tribunal holding her disqualified for benefits and liable for a refund, claimant's appeal to us was filed more than 45 days after the final decision of the Board. It is out of time. R. 2:4-1(b). No party raises this issue and in this matter, in which that is only the last of a series of irregularities, we are inclined to relax the rule within the limitations of R. 2:4-4(a) on our own motion. We would only add that the averment of the claimant in her notice of appeal that she was appealing from a "decision * * * dated April 29, 1977" changes neither the fact that the decision was actually dated April 19, 1977 or that the appeal was tardy.
Claimant's testimony before the Appeal Tribunal reports that she was first employed in the Xerox Corporation (Xerox) offices at Pennsauken as a personnel coordinator on August 4, 1975. On her first "review" at the end of eight months  she advises that standard operating procedure required a review after six months  her supervisor told her, "I was not doing a good job and that I wasn't doing enough work and that I was worthless." According to claimant, on the next four consecutive work days she was berated, confronted with "another person who knew nothing about my work" who also said she "wasn't doing a good job," and embarrassed. Each time she "got upset * * * and went home." Later testimony from her supervisor confirmed a "normal" five-day review involving four individual meetings, agreed that claimant was advised of the need for "improvement in performance level, and based upon that, there would be some type of formal counseling." He denied calling claimant offensive names and denied making derogatory *304 statements except for the "normal review" criticism of her work. In her testimony in this later hearing, claimant conceded that the criticism was levelled in her office with the door shut.
There also appears from claimant's testimony evidence that her supervisor took exception to her social relationship with a coemployee. The supervisor conceded this concern, testifying that such relationships with any potential for conflict of interest were contrary to company policy, and that since claimant was the personnel coordinator as well as his secretary, that potential existed.
It appears undisputed that the following week claimant simply did not return to work. Apparently her last day of work was March 29, 1976.
The record before us indicates that on April 4, 1976 she applied for unemployment compensation. During that month a deputy in the local claims office held claimant disqualified for benefits on the ground that she left work voluntarily without good cause attributable to such work. Claimant appealed, apparently within time, on April 28, 1976. A hearing before an examiner for the Appeal Tribunal eventuated on June 23, 1976, at which only claimant and her counsel appeared. Her counsel concluded the presentation with a summation which ended with reference to harassment by the supervisor, "[w]ho, of course," counsel observed, "hasn't seen fit to show up today and contradict any testimony here."
By a decision dated June 24, 1976 and said to have been mailed June 28, 1976, the Appeal Tribunal reversed the earlier decision, holding that claimant did in fact have good cause attributable to her work for leaving her job. It remanded the matter to the deputy for a determination of the period of eligibility.
On July 27, 1976 a letter was dispatched from the Personnel Manager for Eastern Area Distribution at the Mid-Atlantic Region Headquarters of Xerox to the Division of Unemployment and Disability Insurance, Appeal Tribunal, advising that "the first notification we received of [the *305 Castellucci] claim was a copy of the final decision forwarded to our office from the Princeton Branch on July 20, 1976." It continued:
After reconstructing what has occurred, we believe you sent all correspondence (including all notices) to the Xerox Branch office in Princeton. Since Mrs. Castellucci never worked for that Branch, they had no knowledge of her and did not know what to do with your notices. The situation was particularly aggravated by the fact that we are part of an organization which is totally separate from the Princeton Branch. The fact is that Mrs. Castellucci worked for Xerox at our Local Distribution Center in Pensauken [sic], New Jersey.
The letter continued with a statement of the "even greater concern" the company had for the falsity  "[w]e can state conclusively"  of the claims it understood had been made with respect to the supervisor's conduct. The company added:
It is unfortunate that we had no opportunity to offer evidence as to the actual circumstances surrounding Mrs. Castellucci's voluntarily leaving our employ. We recognize that the time limits for appeal have expired, but would welcome the opportunity to re-open the case if you so desire.
In a response by way of printed form, dated October 13, 1976, the chairman of the Board of Review stated the "Date of Appeal" to be 7/29/76 and promised Xerox it would "be advised of whatever action is taken in the matter by the Board." On January 19, 1977 an "Order to Remand" issued from the Board, setting aside the earlier decision and directing a rehearing and a new decision.
A second hearing followed on February 2, 1977 at which time claimant again testified, as did her supervisor.
This time, in a decision dated February 3, 1977, the Appeal Tribunal affirmed the deputy, holding claimant disqualified and directing the refund of benefits paid. Claimant filed a timely appeal to the Board and the Board affirmed the decision of the Appeal Tribunal. It is from that action claimant appeals.
*306 Appellant asserts four grounds for appeal. Those two which urge that res judicata or collateral estoppel should be invoked and that the determination was arbitrary, capricious and unreasonable cause us little concern.
While we do not doubt, as claimant insists, that the principles underlying res judicata and collateral estoppel are available to and worthy of discriminating recognition in administrative agencies "to serve the ends of administrative justice," it is also quite apparent that "the power to reconsider, to rehear and to revise determinations may be regarded as inherent in administrative agencies." Trap Rock Industries, Inc. v. Sagner, 133 N.J. Super. 99, 109 (App. Div. 1975), aff'd by an equally divided court, the majority "substantially for the reasons" expressed by the Appellate Division. 69 N.J. 599, 600 (1976). It is notable that even the dissent in the Supreme Court, for whom a substantial opinion was authorized by Justice Mountain, while refusing to regard the matter as one from an administrative agency, did not at all take issue with the proposition that in matters of policy, at least, government need not be bound by prior decision. This opinion agreed expressly that, "In determining when resort should be had to res judicata or any other like rule, it would seem important to study the needs unique to each particular case." 69 N.J. at 606.
As far as the claim relating to the allegedly arbitrary nature of the decision is concerned, we are wholly satisfied that the findings might reasonably have been reached from sufficient evidence in the whole record and we will not disturb them. Mayflower Securities v. Bureau of Securities, 64 N.J. 85 (1973); Parkview Village Asso. v. Collingswood, 62 N.J. 21 (1972). In view of the fact that the Appeal Tribunal found that claimant failed in her effort to prove that the conditions of her employment were so severe as to give her no alternative but to leave the job, citation of Kaplowitz v. K & R Appliances, Inc., 108 N.J. Super. 54, 61-62 (App. Div. 1969), certif. den. 55 N.J. 452 (1970) is also appropriate.
*307 A third argument challenges the Xerox appeal as untimely. Appellant's brief is singularly unhelpful. One case is cited in the entire argument on this point, which argument consists of a total of 32 lines. Counsel argues that the scope of our review "of acts of an administrative agency in a quasi-judicial capacity is narrowly limited to an examination and determination of whether it acted arbitrarily, capriciously or otherwise illegally and to a correction of any abuse of the discretion legislatively delegated to it." For this broad, general and unexceptionable proposition counsel cites Tomko v. Vissers, 21 N.J. 226 (1956), a zoning case. Inexcusably unmentioned is citation to the respected, oft-cited case of Lowden v. Board of Review, 78 N.J. Super. 467 (App. Div. 1963), a decision apparently resounding with help for appellant. We are entitled to better treatment than this. State v. Hild, 148 N.J. Super. 294 (1977).
Probably mindful of Lowden, Xerox in its letter of July 27, 1976 referred to above, acknowledged that "the time limits for appeal have expired." We need not here consider the difficult issue of whether the Board may reopen the hearing without regard for the statutory time limitation for appeal (N.J.S.A. 43:21-6(c), but see Air-Way Branches, Inc. v. Board of Review, 10 N.J. 609 (1952)), at least until we ascertain whether the time for Xerox to appeal had, in fact, expired. Because of the basis for disposition, we are also excused from the difficult task, inherent in this issue of the Board's power to reopen, of reconciling such power with the holding of Lowden, supra, which specifically deprives the Board of jurisdiction to entertain an appeal after expiration of the statutory time.
We are instructed in Air-Way Branches, Inc. v. Board of Review, supra, that the statutory time limit, though short, is fair unless the notice given of the determination is insufficient "to start the period of limitation," 10 N.J. at 615. This latter contingency would seem to be available to Xerox here, if from nothing else than the fact the Board chose to *308 regard this as an appeal. But the issue was not raised or considered below and the record is wholly devoid of evidence from which we might determine if such was the case.
We might avoid the whole issue by invoking the rule which precludes a party from raising an issue for the first time on appeal. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). In this matter in which appellant is being held responsible for repayment of more than $4,000, the interests of justice require that we do not. Accordingly, we remand to the Board for a plenary hearing solely on the issue of the sufficiency of notice to Xerox with respect to the determination of the Appeal Tribunal of June 24, 1976. The claimant, the State and Xerox shall all have the opportunity to present evidence in this regard, at the conclusion of which the Board shall make findings of fact with regard to the sufficiency of the notice.
Finally, appellant asserts that "it was error for the Appeal Tribunal to direct recovery of benefits paid because such power was vested by statute exclusively with the Director of the Division of Employment Security." Unsupported by reference to anything except N.J.S.A. 43:21-16(d), this argument is bottomed only upon emphasis on the phrase therein, "if the director in his discretion directs recovery."
It is clear, of course, that the intent of the Legislature in providing that "a representative or representatives designated by the Director of the Division of Employment Security" could determine whether unauthorized benefits had been paid toward the objective of the issuance of an order directing their refund was to protect the fund from depletion by anything except valid benefit payments. Kugel v. Board of Review, 66 N.J. Super. 547, 550 (App. Div. 1961). On the other hand, obviously the Legislature recognized that without the phrase here relied on by appellant the ordering of such a refund would be mandatory, even in cases where the result thus produced was inequitable. See Labor and Industry Dep't v. Smalls, 153 N.J. Super. 411 (App. Div. 1977). We are entirely satisfied that in these circumstances the interpolation *309 of this phrase was not intended by the Legislature to limit the broad power of delegation reposed in the Director, but rather signified the intent of the lawmakers that discretion exists to ameliorate, in appropriate cases, the hardship which inevitably accompanies an order for refund. Such an overall purpose appears clear to us and first attention will go to it even as against the constraint of a literal reading. Continental Cas. Co. v. Knuckles, 142 N.J. Super. 162, 167 (App. Div. 1976).
Contemporary construction of statutes by administrative usage is an acknowledged aid to the ascertainment of legislative intent, said to be entitled to "great weight." Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 69-70 (1978); 3 Sutherland, Statutory Construction (4 ed. 1974), § 65.05 at 173. Commonly the Appeal Tribunal has exercised unchallenged its right to order refunds under N.J.S.A. 43:21-16(d). See, for instance, the recent consideration of the whole sanction problem in Malady v. Board of Review, 76 N.J. 527 (1978), opinion on remand 166 N.J. Super. 523 (App. Div. 1979). In Malady the Supreme Court refers in express terms to the statutory discretion of the director, and then affirms a refund ordered by the Appeal Tribunal. See also, remand opinion supra at 535.
Appellant's argument in this respect is without merit.
Nonetheless, we recognize that the statutory power to order a refund or forego that right is one involving the exercise of administrative discretion. In those circumstances we believe that the factors which influenced that decision should be made a matter of record. Such procedure serves three conspicuous and highly desirable purposes. First, it insures that there was a conscious exercise of discretion in the particular case. Second, it tends to inspire in the public a measure of confidence in the forthright manner in which its governmental agencies function and to conquer public fear and suspicion that these decisions might be less than well considered. Third, and most importantly, it gives the reviewing court an opportunity to evaluate and understand *310 the reasons for the administrative action against the too common general charge that the unexplained result is arbitrary. See Smith v. E.T.L. Enterprises, 155 N.J. Super. 343 (App. Div. 1978); St. Vincent's Hospital v. Finley, 154 N.J. Super. 24 (App. Div. 1977). It occurs to us that these purposes are of a particularly compelling necessity in a matter in which a claimant has accomplished all procedural steps without fault on her part, becomes a victim of administrative oversight and then is compelled to repay over $4,000, probably long spent as a result of an unemployed condition.
Accordingly, should the Board determine on the remand that the notice to Xerox was insufficient to cause the time for appeal to commence whereby the Xerox letter of July 27, 1976 initiated a timely appeal, then in its further determination it shall also reconsider its decision with respect to the claimant's liability for refund or partial refund and accompany this determination with some explication of the factors which conduced to the result.
Remanded for further proceedings in accordance with the foregoing. Jurisdiction is retained.