[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
On November 18, 1993, the plaintiffs, Jeffrey and Alison Wight, filed a six count complaint against the defendants, the Town of Southington, the Town of Southington Planning and Zoning Commission (the "commission"), and certain commission members in their individual capacity, for damages arising out of the commission's denial of the plaintiffs' application for subdivision approval (the "application").
In count one the plaintiffs allege that they were owners of an undeveloped parcel of land measuring approximately 12.6 acres and located in an R-40 zone on Rahlene Drive in Southington. On or about September 3, 1991, the plaintiffs made application to the commission for the subdivision of their undeveloped land into seven approved building lots, to be known as the Fox Hollow Subdivision. The application provided for the extension of Rahlene Drive, an already existing temporary cul-de-sac. The extension of the Rahlene Drive was to be approximately five hundred feet in length and CT Page 5730 was to result in Rahlene Drive being a temporary cul-de-sac with an approximate length of seven hundred feet.
The commission unanimously approved the plaintiffs' application at its regular meeting held on September 17, 1991. On October 2, 1991, the defendants published legal notice of the plaintiffs' approval. At the next regular meeting, held on October 1, 1991, the commission, upon motion, voted to reconsider the plaintiffs' subdivision approval. The Southington Town Planner subsequently notified the plaintiffs of the commission's action and further that their application would again be reviewed at a regular meeting to be held on October 15, 1991. At that meeting the plaintiffs appeared and introduced option agreements held by them for the purpose of purchasing additional land from land owners surrounding the subdivision. At the conclusion of the meeting the commission voted to table action on the plaintiffs' application.
The plaintiffs allege that at a regular meeting held on November 7, 1991, the commission voted four to three to deny the plaintiffs' application based on the concern by some members over the length of the proposed extension of the existing cul-de-sac, Rahlene Drive.
On November 4, 1991, the plaintiffs appealed the commission's October 1, 1991, action to reconsider their approval of the application to the Superior Court, Judicial District of Hartford/New Britain at New Britain. On December 6, 1991, the plaintiffs appealed the commission's November 7, 1991, action denying the plaintiffs' application to the Superior Court above. On January 5, 1993, the Superior Court, Jackaway, J., issued a memorandum of decision sustaining the plaintiffs' October 1, 1991, appeal and dismissing the plaintiffs' December 6, 1991, appeal as moot.
The plaintiffs now claim, pursuant to 42 U.S.C. § 1983, that the defendants' actions deprived the plaintiffs of their civil rights guaranteed by the United States Constitution and that the defendants deprived the plaintiffs of their rights to substantive and procedural due process protected under the United States and Connecticut constitutions. The plaintiffs further claim punitive damages against commission members in their individual capacity.
On October 28, 1994, the defendants filed a motion for CT Page 5731 summary judgment on all counts of the plaintiffs' complaint accompanied by a memorandum of law in support of the motion. On February 15, 1995, the plaintiffs filed a memorandum of law in opposition to the motion for summary judgment.
The purpose of a motion for summary judgment is "to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial."Orenstein v. Old Buckingham Corp., 205 Conn. 572, 574,534 A.2d 1172 (1987). Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; Less v.Middlesex Ins. Co., 219 Conn. 644, 650, 594 A.2d 952 (1991). The test for the granting of a summary judgment motion is "Whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Connellv. Colwell, 214 Conn. 242, 247, 571 A.2d 116 (1990).
The defendants argue in their memorandum that the plaintiffs had no "clear entitlement" to approval of their application, and that the mere approval of an application by the commission confers nothing in the nature of a vested right that would prevent future reconsideration of the application. Furthermore, the defendants argue that the plaintiffs may not seek redress under the state constitution since no private right of action exists under Connecticut's due process clause.
In response, the plaintiffs argue that they were clearly entitled to the approval given to their application on September 17, 1991 and that neither any statute nor the commission's own rules of procedure authorized the commission to reconsider its prior approval.
Finally the plaintiffs argue that the doctrine of collateral estoppel bars the relitigation of the defenses raised by the defendants in the present action.
1. "Clear Entitlement" Test
The Connecticut Supreme Court has adopted the "clear entitlement" test set forth in RRI Realty Corp. v.Incorporated Village of South Hampton, 870 F.2d 911 (2d Cir.),cert. denied, 493 U.S. 893 (1989), in determining the extent CT Page 5732 to which a civil rights claimant in a land regulation case has stated a due process claim under the federal constitution. See generally, Red Maple Properties v. Zoning Commission,222 Conn. 730, 610 A.2d 1238 (1992). "The `clear entitlement' test mandates that the possession of a constitutionally protected property interest is a threshold requirement for a successful substantive or procedural federal due process claim." Kelley Property Development, Inc. v. Lebanon,226 Conn. 314, 321-22, 627 A.2d 909 (1993). "The `clear entitlement' test asks whether there is a certainty or a very strong likelihood that the application in question would have been granted, but for the wrongful conduct of the local officials. . . . A very strong likelihood means not simply a high probability of approval, but rather a virtual assurance of approval because any discretion is narrowly circumscribed." (Citations omitted.) Id., 322-23.
The degree of discretion that a zoning authority possesses is often the determinative factor in the clear entitlement analysis. Id., 323; Red Maple Properties, supra,222 Conn. 739. A "very strong likelihood" of approval exists only when the discretion of the regulatory agency is so narrowly circumscribed that approval of a proper application is virtually assured. RRI, supra, 870 F.2d 918; Red MapleProperties, supra, 222 Conn. 740.
In the court's opinion, the plaintiffs have not established that approval of their application was virtually assured. For example, the transcript from the October 15, 1991 meeting indicates that some commission members were concerned over what they considered the excessive length of the proposed cul-de-sac. The applicable zoning regulation implicitly authorizes commission members to make discretionary decisions in evaluating the length of proposed cul-de-sacs. Section 3-03 of the Rules and Regulations Controlling Subdivision of Land of the Town of Southington, states:
Permanent Cul De Sacs — Maximum Length
 Dead-end or cul-de-sac streets shall not, in general, exceed six hundred (600) feet in length in the R-12 or R-20/25 zone or one thousand (1000) feet in the R-40 or R-80 zones, and shall be constructed in accordance with the CT Page 5733 appropriate street specifications and/or administrative order and the standard design layout.
(Emphasis added.) The Court in Kelley had the opportunity to address the same issue with regards to a Lebanon zoning regulation authorizing the dedication of land as open space, parks and playgrounds in a subdivision. The relevant portion of that regulation stated:
 B. Area — The minimum area of open space shall be 10% of the total area of the land to be subdivided whether or not it is to be so subdivided entirely at the time of application. Generally such dedication shall not be less than one acre and shall be of such size and location as deemed appropriate by the Commission.
(Emphasis added.) The court concluded that "[t]his language, particularly the highlighted portions, authorizes the commission to make discretionary decisions on subdivision applications depending on the open space proposal." Id., 326.
Furthermore, the Connecticut Supreme Court has recognized the "wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers." Burnham v. Planning Zoning Commission,189 Conn. 261, 266, 455 A.2d 339 (1983). "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution." Id., 266.
2. Reconsideration of Plaintiffs' Application
In the absence of a statutory prohibition, an administrative officer may open his decision within the appeal period for a proper purpose including the correction of errors, to change his mind, or to obtain more adequate factual grounds for his decision. Sharp v. Zoning Board of Appeals,11 Conn. L. Rptr. 399, 402 (March 31, 1994, Levin, J.); citingCicala v. Administrator, 161 Conn. 362, 288 A.2d 66 (1971). CT Page 5734
The appeal process from local zoning board decisions is codified in General Statutes § 8-8. Relevant portions of that statute state in part:
 (a)(1) "Aggrieved person" means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board . . . .
 (b) Except as provided in subsection (c) and (d) of this section and section 7-147
and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced . . . within fifteen days from the date that notice of the decision was published as required by the general statutes. (Emphasis added.)
The minutes of the October 1, meeting indicate that members of the commission were concerned that the plaintiffs may have retained for themselves a strip of land beyond the proposed cul-de-sac in violation of the zoning regulation which state:
Temporary Cul De Sac
 If adjacent property is undeveloped and future continuation of the proposed street is necessary for convenient movement of traffic representing the best overall traffic pattern, the cul-de-sac shall extend to the abutting property lines. Reserved strips of land shall not be left between the end of a proposed street and an adjacent piece of property.
Section 3-04 of the Rules and Regulations Controlling Subdivision of Land of the Town of Southington. CT Page 5735
During the October 1, meeting, commission member, Mr. Topshe, expressed doubts over the application's approval based on new information. Specifically, Mr. Topshe was concerned about the ownership of a strip of land between the end of the proposed cul-de-sac and adjacent pieces of property. According to Mr. Topshe, as a result of the plaintiffs' statements at the September 17, meeting, he and other commission members were under the impression that there would be no problem with extending and connecting the proposed cul-de-sac to the next street at some future point. The reason for this concern was best illustrated by Southington Town Attorney, Mr. Izzo, who stated that the preferred policy of zoning authorities in general was to extend cul-de-sacs to nearby streets so as not to land lock adjacent property owners. Mr. Izzo stated that this policy is jeopardized by the prospect of a developer reserving ownership of a stub of land between the proposed cul-de-sac and nearby streets and thereby retaining the right to object to any future extension of the cul-de-sac.
Further discussion at the meeting uncovered the possibility that the plaintiffs may in fact have retained an interest, or control over, a strip of land running along side the western boundary of the plaintiffs' subdivision and abutting the end of the proposed cul-de-sac. The plaintiffs acknowledged in their memorandum that they purchased the strip of land in question from the State of Connecticut and took title to it on August 6, 1990. To finance the purchase of the property, however, the plaintiffs quitclaimed their interest in the property to plaintiff Alison Wight's father, Mr. Neri, on July 25, 1991. The plaintiffs' own attorney stated to the commission at the October 15, meeting that the plaintiffs have an agreement with Mr. Neri that if the plaintiffs were able to fund the purchase, Mr. Neri would reconvey the property to his daughter.
Based on this information, Mr. Topshe suggested that the commission receive assurances from either the plaintiffs or Mr. Neri of their intent not to block any future extension of the cul-de-sac to nearby streets. The commission then, upon motion, voted five to one to reconsider the plaintiffs' application.
It should be noted that there is no statute expressly prohibiting the opening of a decision by the commission. CT Page 5736 Secondly, the commission's reconsideration was within the fifteen-day appeal period provided by General Statutes § 8-8(b). The commission's initial decision to approve the application was reached on September 17. Notice of that approval was published on October 2. On October 1, within the fifteen day appeal period, the commission voted to reconsider the September 17 decision. The basis for the commission's reconsideration was proper: to correct what they perceived to be a violation of regulation 3-04.
3. State Constitutional Claims
The Connecticut Supreme Court has stated that the courts of this state "should not construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy." Kelly, supra, 226 Conn. 339. "[T]he legislature, by enacting General Statutes § 8-8, has provided [the plaintiffs] an avenue for administrative relief from the wrongful and allegedly unconstitutional conduct of the defendants." Id., 340. The existence of this remedy weighs heavily against judicial creation of a private cause of action. Id., 340. The plaintiffs pursued this avenue of appeal and were afforded a remedy. To subject commission members, the Town of Southington and the commission, to further litigation as a result of disappointed zoning applicants would "have adverse consequences on the parties, local zoning processes and the courts." Id., 342.
4. Collateral Estoppel
Collateral estoppel, or "issue preclusion", is the doctrine that bars relitigation, in a second action between the same parties brought upon a different claim, of issues already determined in the first action. Rawling v. New Haven,206 Conn. 100, 110, 537 A.2d 439 (1988); see also AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 296,596 A.2d 414 (1991). The related doctrine of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation. Gionfriddo v. Gartenhaus Cafe, 15 Conn. App. 392,401, 546 A.2d 284 (1988), aff'd on other grounds,211 Conn. 67, 71, 557 A.2d 540 (1989).
"For an issue to be subject to collateral estoppel, it CT Page 5737 must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment" (Citations omitted.)Aetna Casualty Surety Co. v. Jones, supra, 220 Conn. 296; see also Restatement (Second) Judgments § 27; the issues sought to be litigated in the new proceeding must also be identical to those considered in the prior proceeding.Crochiere v. Board of Education, 227 Conn. 333, 345,630 A.2d 1027 (1993).
The plaintiffs argue that Judge Jackaway's decision in the prior judicial proceeding, acts to collaterally estop the defendants from asserting the legality of the commission's reconsideration in this case. Upon review of that decision, the court determined that the commission's reconsideration and revocation was "illegal and improper". The court offered no other explanation for reaching that conclusion other than it could "find no statute which permit[ted] the actions taken by the defendant [commission]." However, this court must be persuaded by the rule set forth in Cicala v. Administrator,
supra, 161 Conn. 362, which, in the absence of a statutory prohibition, allows the reopening of an administrative decision within the appeal period.
Absent from the decision is any discussion of the extent to which the plaintiffs had stated a due process claim under the federal constitution. The court finds therefore, that this issue and others raised in the present case were neither litigated in the prior proceeding nor necessary to the judgment rendered therein. Accordingly, the doctrine of collateral estoppel does not bar litigation of the defenses raised in the present action.
The plaintiffs were not clearly entitled to approval since provisions of the zoning regulations give the Commission discretion to deny the subdivision application.
The plaintiffs' application failed to comply with the applicable zoning regulations and therefore the Commission was entitled to deny it.
The mere filing of a decision to approve an application confers nothing in the nature of a vested right and therefore, the commission may reopen and reconsider an earlier decision during the fifteen (15) day appeal period. CT Page 5738
Plaintiff may not seek redress under the State Constitution since no private cause of action exists.
In the opinion of this court there are no genuine issues as to any material facts and the defendants are entitled to judgment as a matter of law.
Judgment may enter for the defendants.
Hale, State Trial Referee, J.