## CHARLOTTE L. SHARP *v.* ZONING BOARD OF APPEALS OF THE TOWN OF EASTON ET AL. (13811)

Lavery, Landau and Schaller, Js.

Argued December 4, 1995—officially released October 17, 1996*

*Benjamin E. Gershberg*, for the appellant (plaintiff).

*Lawrence F. Reilly*, for the appellees (defendants).

LAVERY, J. The plaintiff appeals from the judgment of the trial court upholding the right of the named defendant, the zoning board of appeals of the town of Easton (board), to reconsider a decision it had made

---

* October 17, 1996, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

and published. On appeal, the plaintiff claims that the trial court improperly (1) concluded that the board could reconsider and revoke its original decision without any material change of circumstances or the introduction of newly discovered evidence, (2) held that the board could reconsider and revoke its original decision when the court failed to find that the board's decision to reconsider was supported by substantial and probative evidence, (3) remanded the case to the board rather than reinstating the board's original decision, (4) held that undisclosed communications between the chairman of the Easton planning and zoning commission and two members of the board did not constitute ex parte communications and (5) held that the submission of a letter and appearance of the chairman of the planning and zoning commission before the board did not violate General Statutes § 8-11 and require invalidation of the decision to revoke.

Pursuant to Practice Book § 4013 (a) (1),[1] the defendants[2] present two issues for review. The defendants claim that (1) because the hearing and vote was conducted beyond the maximum time period permitted in General Statutes § 8-7d (a), this court must remand to the board for a new hearing, and (2) the trial court improperly concluded that the board held an impermissible hearing.

The trial court found the following facts. The plaintiff is the owner of a parcel of property measuring approximately eight acres and located in a B residence zone

---

[1] Practice Book § 4013 (a) (1) provides in pertinent part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed, (B) present for review adverse rulings or decisions of the court which should be considered on appeal in the event the appellant is awarded a new trial, or (C) claim that a new trial rather than a directed judgment should be ordered if the appellant is successful on the appeal, that appellee shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues. . . ."

[2] The defendants are the town of Easton and the board.

in the town of Easton. A residence and a detached garage are situated on the property. For many years the plaintiff has maintained several horses on the property.

On January 24, 1991, the zoning enforcement officer of the town of Easton sent a cease and desist order to the plaintiff stating that "[t]he garage building at 114 Center Road is being used for the [c]onduct of a business by person or persons who are not Easton residents and for sleeping quarters by the same persons." The order further stated that such actions violated article VI and article IV, paragraph 4.1.1, of the Easton zoning regulations.

The plaintiff appealed the issuance of the cease and desist order to the board. On April 1, 1991, the board held a public hearing on the plaintiff's appeal. At the hearing, the plaintiff stated that for some time the second floor of the detached garage had been used on an irregular basis as sleeping quarters for a caretaker of the horses. The plaintiff further stated that the second floor of the garage contained a convertible couch, full bathroom, refrigerator and closet. She explained that the caretaker would sleep in those quarters overnight about three or four times a week.

At the conclusion of the hearing, the board tabled the matter until the first week of May, 1991. At the plaintiff's request, the hearing was rescheduled to June. The hearing resumed and was concluded on June 3, 1991. At the conclusion of the hearing, the board voted to grant the appeal and lift the cease and desist order. On June 6, 1991, the board notified the plaintiff that "[t]he use of the property as far as presented is for the hobby of keeping horses and for that use it is necessary to keep a person on the premises 24 hours a day. As such that would qualify as a customary and incidental use of the principal use of the property as a residence and as such having someone sleeping over would be

acceptable because at this point it is not known if a business is being run. Which it would then be a prohibited use of the premises and then it would not be acceptable to have an individual sleeping over on the premises in the detached building."

Notice of the board's decision also was published on June 6, 1991. On June 7, 1991, the attorney for the board wrote to the zoning enforcement officer and stated that he had read in the newspaper that the cease and desist order had been lifted by the board. The attorney stated that it appeared that the matter was concluded as far as the board was concerned and that no further action by the board was necessary.

On June 17, 1991, the board convened a meeting to reconsider its vote on the plaintiff's appeal. Although no notice of this meeting appears in the record, the plaintiff concedes that the chairman of the board issued a notice that the board would convene a special meeting on June 17, 1991, to reconsider its vote on the plaintiff's appeal. The plaintiff, however, claims that she was given only five days advance notice of the meeting. Although the plaintiff and her attorney attended the June 17 meeting, they submitted a letter objecting to that meeting and refused to participate.

At the commencement of the June 17 meeting, the chairman stated that he had called the meeting because (1) he believed that the board incorrectly lifted the cease and desist order based on hardship and (2) he received a letter from Monte Klein, chairman of the planning and zoning commission, urging the board to open the matter.[3] Thereafter, the board voted to open and reconsider the decision.

[3] When the board reconvened to reconsider its decision to sustain the plaintiff's appeal, the chairman made the following statement and read a letter from Klein: "I'd like to call this meeting to order. The meeting is for reconsideration of the vote on application Z-00000-91-4-5; C. Sharp, 114 Center Road To lift Cease and Desist Order Article IV, Section 4.1. The

The board returned to a discussion of the merits of the appeal. Over the plaintiff's objection, Klein was permitted to address the board. At the conclusion of the discussion, a member of the board moved to reaffirm the previous motion to lift the cease and desist order. That motion failed by a vote of three in favor and two opposed. Because General Statutes § 8-7 provides that "[t]he concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations," both the moving member and a member who had opposed the motion agreed that the motion had been defeated.[4]

reason I called this meeting is first I thought myself that the Board made a decision based on a hardship which shouldn't have been, I felt shouldn't have been based on a hardship seeing that it was a cease and desist order. . . . Basically I want to make sure the board understood it is lifting a cease and desist order and they really, I felt, had to find an error with the zoning enforcement officer in carrying out his duties.

"One other thing that prompted me to call this meeting is a letter that I received. It says, 'Dear Mr. Jordan: At the last meeting of the Easton Zoning Board of Appeals the cease and desist order regarding the above property was lifted by a vote of your commission. Kindly note that Section 4.2.9 of the Town of Easton Zoning Regulations provide that a minimum of 10 acres is necessary for the inclusion of an outbuilding for residence for living or occupancy for any person other than the owner. Also note that the only person entitled to occupy the outbuilding is a full time employee employed by the residents of the main building. Further note that the full time employee may not be relatives of the residents of the main house. There is no other provision in the Easton Zoning Regulations for occupancy of any out buildings. With regard to the Sharp application it is my understanding that the [property] consists of less than 10 acres. Hence, Mrs. Sharp is prohibited from using the outbuilding for any occupancy whatsoever regardless of whether or not she is keeping the horses as a hobby or a business. In order to vary this prohibition it would be necessary for her to seek a variance from your Commission. This has not been done. Under the existing rules Mrs. Sharp maintained a helper or assistant on premises provided that person sleeps in the main house. I am hopeful that this information may be of assistance to you in your reconsideration deliberations. Very truly yours, Monte S. Klein, Chairman, of Planning and Zoning.' "

[4] The notice published in the newspaper stated: "C. Sharp, 114 Center Road. Reconsideration of vote to appeal Cease and Desist Order for violation

The plaintiff, thereafter, appealed to the Superior Court claiming that (1) the board lacked authority to reconsider and revoke its decision of June 3, 1991, (2) the board's decision to revoke its original granting of the plaintiff's appeal was not supported by the evidence in the record, (3) the decision was illegal because the board received additional evidence after the hearing was closed, (4) the board continued the public hearing beyond the time provided in § 8-7d and the board's decision was illegal because the chairman of the planning and zoning commission submitted a letter to and personally appeared before the board in violation of General Statutes § 8-11 and (5) the board's action of June 17 deprived her of property without due process of law in violation of the fourteenth amendment to the constitution of the United States and that she is entitled to attorney's fees pursuant to 42 U.S.C. § 1983.

At the hearing on the appeal, the trial court took additional testimony based on the allegations of ex parte communications. See General Statutes § 8-8 (k). The trial court heard evidence from board member Alfred Treidell who testified that he voted with the majority at the June 3 meeting and that Klein called him after the board's decision was printed in the paper to state his disagreement with the decision. Treidell testified that he did not disclose his conversation with Klein to the board at any time prior to or at the June 17 meeting, when he changed his mind and cast the deciding vote that changed the board's original decision.[5] Treidell also testified that Klein's statements to him over the telephone were essentially the same as his statements to the board.

of Article VI and Article IV, section 4.1 FAILED TO LIFT Cease and Desist Order."

[5] Treidell testified that he changed his mind because he changed his "focus."

Board member Brian Fatse testified that he had a conversation with Klein in the hallway before the June 17 meeting concerning whether the planning and zoning commission had the right to reconsider a previously made decision. Klein told him that the board had the authority to reconsider a decision. Fatse testified that this affected his decision on the motion to reconsider. On cross-examination, Fatse testified he would have voted the same way if he had not talked to Klein. Fatse did not disclose at the June 17 meeting that he had had the conversation with Klein.

The chairman Donald Jordan testified that he did not vote at the June 3 meeting because his vote was not needed but he voted with Treidell at the June 17 meeting because he thought the zoning enforcement officer should be upheld. He testified that he changed his mind the night of the June 3 meeting but waited a few days to call a meeting and that at the time the meeting was called the secretary had already published the June 3 decision.

The trial court concluded that the board violated General Statutes § 8-7d (a)[6] when it held an additional hearing to reconsider its earlier decision. The trial court sustained the appeal and remanded the matter for a new hearing. In its articulation, the trial court found that the conversations between Klein and the board members were not ex parte communications because

---

[6] General Statutes § 8-7d (a) provides in pertinent part: "[I]n all matters wherein a[n] . . . appeal must be submitted to a . . . zoning board of appeals under this chapter and a hearing is required on such . . . appeal, such hearing shall commence within sixty-five days after receipt of such . . . appeal and shall be completed within thirty days after such hearing commences. All decisions on such matters shall be rendered within sixty-five days after completion of such hearing. The petitioner or applicant may consent to one or more extensions of any period specified in this subsection, provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such petition, application, request or appeal."

the conversations took place after the board had rendered and published its decision.

The dispositive issue in this appeal is when and under what circumstances can a zoning board of appeals open and reconsider a final decision that has been published. In its decision, the trial court relied on dicta in *Cicala* v. *Administrator, Unemployment Compensation Act*, 161 Conn. 362, 369–70, 288 A.2d 66 (1971), in which our Supreme Court stated that, in the absence of a statutory prohibition, an administrative officer may open his decision within the appeal period for a proper purpose including to correct errors, to change his mind or to obtain more adequate factual grounds for his decision.

In *Cicala*, the administrator of unemployment compensation benefits notified the plaintiff that benefits had been mistakenly paid to him during a certain period and, therefore, he owed money to the unemployment compensation fund. The plaintiff appealed this decision to the unemployment compensation commissioner. The commissioner held hearings on the appeal and, on February 14, 1967, rendered a decision for the plaintiff. On February 27, 1967, the commissioner opened the case on motion of the administrator to present new evidence. On the basis of the new evidence, the commissioner reversed his previous decision. Id., 364.

Our Supreme Court upheld the right of the commissioner to open his decision. Id., 368–69. The court began by recognizing that General Statutes (Rev. to 1962) § 31-248 provided that "any decision of a commissioner in the absence of an appeal therefrom, as herein provided, shall become final on the fifteenth day after the date of its rendition." *Cicala* v. *Administrator, Unemployment Compensation Act*, supra, 161 Conn. 368. The court stated that "[t]he authorities on whether an administrative body or officer may grant a rehearing, in the absence of a specific grant of such authority by statute,

are divided. 2 Am. Jur. 2d, Administrative Law, § 522; note, 73 A.L.R.2d 939, 942. Most of the authorities cited deal with a situation wherein an agency seeks to open a decision which had become final. In such cases we have held many times that an administrative tribunal is not permitted to reverse itself unless there has been a material change of circumstances. *Rocchi* v. *Zoning Board of Appeals*, 157 Conn. 106, 111, 248 A.2d 922 [1968]; *Consiglio* v. *Board of Zoning Appeals*, 153 Conn. 433, 438, 217 A.2d 64 [1966]; *Mynyk* v. *Board of Zoning Appeals*, 151 Conn. 34, 37, 193 A.2d 519 [1963]. 'It is well settled that while an administrative officer or board may review a decision and revoke action once duly taken, it should not ordinarily do so; otherwise there would be no finality to the proceeding and the result would be subject to change at the whim of the officer or board or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence. *Rommell* v. *Walsh*, 127 Conn. 272, 276, [15 A.2d 6 1940]. This is a wholesome and salutary rule but is by no means inflexible.' *Middlesex Theatre, Inc.* v. *Hickey*, 128 Conn. 20, 22, 20 A.2d 412 [1941]. *Here, the question is whether an administrative officer is authorized, between the time his decision is rendered and the time it becomes final, to open that decision and reverse it.* 'The need for an opportunity for correction of errors, change of mind, or obtaining more adequate factual grounds for a decision is no less present in the case of a decision of . . . [an administrative officer] than in the case of a judgment of a Court. The mere filing of a decision confers nothing in the nature of a vested right.' *Lyons* v. *Delaware Liquor Commission*, 44 Del. 304, 318, 58 A.2d 889 [1948]; see *Air-way Branches, Inc.* v. *Board of Review*, 10 N.J. 609, 614, 92 A.2d 771 [1952]." (Emphasis added.) *Cicala* v. *Administrator, Unemployment Compensation Act,* supra, 369–70.

The difference between our Supreme Court's decision in *Cicala* and this case is that the unemployment compensation statute, § 31-248, in existence at the time of *Cicala*, provided that the decision of the commissioner is not final until fifteen days after the decision is rendered. There is no provision in either the state statutes or the Easton zoning regulations that the decision of the board is not final at the time it is made. Nor is there any provision in the statutes or the Easton zoning regulations that provides for the board to review or open its decision once it is made. Because of the statutory difference concerning the finality of the decision, we are not persuaded by the dicta set out in *Cicala*.

"It is unresolved whether a land use agency can open and reconsider a decision after it has been made, but before publication of the notice of the decision. There is no land use statute allowing reconsideration, which suggests that it can only be done to correct errors or for some other extraordinary reason, in order to promote finality and certainty of decisions and to prevent attempts to influence agency members to change their minds. The statutory time limits for land use decisions have deterred this problem." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice § 21.1 (1996 Sup.). The factual situation in this case goes a step beyond Fuller's analysis because the decision was published prior to the special meeting called to reconsider the decision.

In *Toffolon* v. *Zoning Board of Appeals*, 155 Conn. 558, 236 A.2d 96 (1967), a case that involved an appeal taken from an order of a zoning enforcement officer, the plaintiff claimed that the board voted on the question on several separate occasions with different results and that the last vote was invalid. Our Supreme Court upheld the board's decision and stated that "[a]lthough the board met on three different dates, the three meetings constituted but one session of the board. . . . We

are not here concerned with a situation in which a board has duly taken final action on a matter and has thereafter entertained an application for a rehearing. . . . In the present case there was but one session of the board and one announcement of its decision. When the meeting was recessed on January 10 and again on January 18, the board members were aware that no final decision had been reached on the plaintiff's appeal and that there would be further deliberations on that matter. *The rule in such situations is that, unless some right of a third person intervenes, all deliberative bodies have a right to reconsider their proceedings during a session as often as they think proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done.* . . . The proceedings on the plaintiff's appeal were not terminated prior to January 22, 1966. The several votes were but steps taken toward a single, *final decision.*" (Citations omitted; emphasis added.) Id., 565–66.

The trial court correctly pointed out that the law of this jurisdiction is that a board cannot reverse its previous decision unless the facts and circumstances that actuated the decision are shown to have so changed as to vitiate or materially to affect the reason that produced and supported the decision. This rule has been applied in the context of successive applications or appeals to a board. See *Grillo* v. *Zoning Board of Appeals*, 206 Conn. 362, 367, 537 A.2d 1030 (1988).

In *St. Patrick's Church Corp.* v. *Daniels*, 113 Conn. 132, 154 A. 343 (1931), the case often cited for the rule concerning successive applications, our Supreme Court included dicta applicable to the factual situation in this case. "The situation here presented is not that which has most frequently been subjected to question in the courts—a reconsideration and reversal of decision upon the same application or appeal. As to this, it

appears to be well established that a zoning board of appeals or adjustment should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence. *People ex rel. Swedish Hospital* v. *Leo*, 198 N.Y. Supp. 397; *People ex rel. Brennan* v. *Walsh*, 195 N.Y. Supp. 264; Baker, Legal Aspects of Zoning, p. 92. However, the power to reopen 'should not be interpreted with too much refinement, nor should it be hedged about with technicalities, if, in the meantime, no rights have arisen which would be injured.' Metzenbaum, Law of Zoning, p. 264. 'Great difficulty might be experienced by a hard and fast rule denying permission to rehear and modify [the board's] rulings; that is to say, in correcting matters which were overlooked and were of slight materiality, but which were capable of speedy and practical correction . . . without prejudice to the rights of any one. . . . But the power to reconsider is not an arbitrary one and its exercise should be granted only when there is justification and good cause.' *People ex rel. Brennan* v. *Walsh*, supra, p. 266; *McGarry* v. *Walsh*, 210 N.Y. Supp. 286; *Barker* v. *Boettger*, 208 N.Y. Supp. 295; 43 Corpus Juris, p. 356. The foregoing is sufficient to indicate the reasonable and recognized limitations upon reconsideration and alteration of orders or decisions of such boards upon an application or appeal." *St. Patrick's Church Corp.* v. *Daniels*, supra, 137–38.

Although dictum is not binding because it is made "with no intent to lay down in positive form a rule of law"; *Sharkiewicz* v. *Smith*, 142 Conn. 410, 412, 114 A.2d 691 (1955); we construe our Supreme Court's language in *St. Patrick's Church Corp.* to be persuasive and a balanced statement of the law as it applies to

reconsideration of decisions made by a zoning board of appeals.

We must first decide, however, when a decision of the zoning board of appeals is final so that it cannot be opened before considering the issue of whether the board had justification and good cause for opening its decision. Section 8-7[7] of the General Statutes requires the decision to be published within fifteen days of the date the board makes its decision. If the board does not publish its decision within that time frame the statute allows the applicant to publish it. If the statute allows the applicant to publish the decision it must of necessity be a final decision. Unlike § 4-181 (a) of the Uniform Administrative Procedure Act, neither the Easton zoning regulations nor the zoning statutes provide for a motion to reconsider or allow the agency on its own motion to reverse or modify its own decision because of a change of circumstances. In addition, the zoning statutes provide for time limits to make decisions and

---

[7] General Statutes § 8-7 provides in pertinent part: "Whenever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall state upon its records the reason for its decision and the zoning bylaw, ordinance or regulation which is varied in its application or to which an exception is granted and, when a variance is granted, describe specifically the exceptional difficulty or unusual hardship on which its decision is based. Notice of the decision of the board shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person who appeals to the board, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who requested or applied for such special exception or variance or took such appeal may provide for the publication of such notice within ten days thereafter. Such exception or variance shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk, as the case may be, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

these statutory limits cannot be extended by case law. See General Statutes § 8-7d. The publication of the decision is the promulgation of board's final decision. In *Hyatt* v. *Zoning Board of Appeals*, 163 Conn. 379, 387, 311 A.2d 277 (1972), the Supreme Court stated: "The requirement of timely publication contained in § 8-7 as well as § 8-28 is 'a matter of substance and of the essence of the thing to be accomplished, not a matter of mere procedure or convenience.' *Akin* v. *Norwalk*, [163 Conn. 68, 74, 301 A.2d 258 (1972)]."

In *Akin* v. *Norwalk*, supra, 163 Conn. 73–74, the Supreme Court stated: "The obvious purpose of § 8-28, requiring the publication in a newspaper of the decision of a commission, is twofold: (1) To give notice to interested parties of the decision, and (2) to commence the start of the fifteen-day appeal period. 'It is the obvious purpose of § 8-28 to afford a right of appeal to a party aggrieved by the action of a planning commission. The right of appeal, if it is to have any value, must necessarily contemplate that the person who was to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue.' *Hubbard* v. *Planning Commission*, 151 Conn. 269, 271–72, 196 A.2d 760 [1963].

"A statute which requires notice of a decision of a commission to be published so that aggrieved persons may determine whether they should appeal, and which, in fact, authorizes a fifteen-day appeal period to commence from the date of publication goes to the essence of the thing to be accomplished. Failure to publish notice of a decision would prevent the appeal period from running, thereby causing unwarranted and undesirable delay, results which we do not find the legislature could reasonably have intended. '[A] statute such as § 8-28 fixing a rather brief time within which an appeal may be taken to the courts is designed not only to afford protection to an aggrieved person but also to

secure, in the public interest, a speedy determination of the issues involved.' " In *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, 195 Conn. 276, 281, 487 A.2d 559 (1985), in reviewing the adequacy of a published notice of decision the Supreme Court stated: "In reviewing the adequacy of the notice of decision employed here, we are mindful of the purpose such notice is meant to serve. 'The right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue. Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless.' *Hubbard* v. *Planning Commission*, [supra, 151 Conn. 271–72]."

It is obvious from the requirement of publication for the purpose of notice and by running the appeal period from the date of publication that the act of publication indicates that a final decision has been reached. There is a period of up to fifteen days between the date of decision within which the board may open its decision for good cause to correct matters that were overlooked and were capable of speedy and practical correction. Once the board published notice of the decision, its decision was final and could not be opened. Because the board opened its decision after the publication of notice thereof, that action was invalid and the published decision remained in effect. It is unnecessary to decide whether the board had good cause or justification to open its decision.

The defendants have raised two claims in their counterstatement of issues on appeal. The defendants claim that the June 3 hearing was in violation of General Statutes § 8-7d (a), which requires that hearing be completed within thirty days of commencement with an

extension of no more than thirty days for a total of sixty days. The defendants argue that because the first hearing was held on April 1, 1991, more than sixty-three days had passed and a new hearing was mandated by our Supreme Court's decision in *Frito-Lay, Inc.* v. *Planning & Zoning Commission*, 206 Conn. 554, 538 A.2d 1039 (1988). The trial court declined to rule on the issue because the defendants did not raise it in a timely manner. We have reviewed the record, transcripts and trial briefs in this case and conclude that the trial court was correct that the defendants failed to raise this issue in a timely manner. We, therefore, decline to review this claim. See Practice Book § 285A.[8]

The defendants' second claim on appeal is that the court was incorrect in concluding that the board held an impermissible "hearing" on June 17, 1991. Our decision that the meeting called to reconsider and open the original decision was invalid is dispositive of this issue.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment sustaining the appeal of the plaintiff and reinstating the board's original decision sustaining the plaintiff's appeal from the order of the zoning enforcement officer.

In this opinion the other judges concurred.

---

[8] Practice Book § 285A provides in pertinent part: "If a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief. If this is not done, it will not be the duty of either the trial court or the appellate court to decide the claim."