[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Patsy Liucci appeals the decisions of the defendant zoning board of appeals of the town of Suffield denying his applications for a variance of the zoning regulations concerning building lot area size. The defendant board acted pursuant to section 4-41 of the Suffield Zoning Regulations and General Statutes § 8-6. The plaintiff appeals pursuant to General Statutes § 8-8. The court finds the issues in favor of the defendant board.
The facts necessary to the court's decision are not in dispute and are fully reflected in the record. The plaintiff owns the property in question, which is located in an R-11 zone. This is a residential zone which establishes a minimum lot size per residential building of 11,250 square feet. The plaintiff's lot size is approximately 21,783 square feet. He desires to subdivide the parcel into two building lots, which would require a minimum of 22,500 square feet to conform to the regulations. For that reason, he applied for a variance of the lot size requirement.
Although neither the statutes nor the town zoning regulations require individual notification to anyone, the variance application form provided by the town and the accompanying instructions state that the applicant must list all abutting property owners and those owning property within 100 feet of the subject property. It is the board's practice to notify those property owners individually of the application and the hearing date, in addition to the statutory published notices. In this case, the plaintiff listed four other property owners but was apparently unaware of the existence of several others whose property either abutted his or was within 100 feet. The town sent individual notices of the application and the date of the hearing, July 27, 1999, to those property owners listed by the plaintiff on the application but sent no notices to the others. The town did publish notices of the hearing, however, in the newspaper as required by statute.
At the July 27 hearing, the plaintiff appeared and spoke in favor of his application. One of the property owners who had receive an individual notice from the town appeared and spoke in opposition. Following the hearing, on the same day, the board met and granted the application, noting that it found the required hardship to be the "change of zoning regulations."
The day following the hearing, the plaintiff and the chairman of the defendant board were advised by Thomas Krupa that he objected to the variance and stated that he had not known about the application or the hearing. Krupa is one of the adjacent property owners who had not been CT Page 8836 listed on the plaintiff's application and who had not, therefore, been individually notified of the hearing.
The chairman of the board immediately notified the town clerk and the plaintiff that the board's July 27 decision was "null and void" on the basis that all of the adjacent property owners had not been individually notified of the plaintiff's application and the hearing. The board never published notice of the decision granting the variance or of the chairman's action rescinding that decision.
Upon receiving notice that the board had nullified its original decision, the plaintiff filed a new application for the variance, this time including the names of all of the adjacent property owners. Notices of a hearing on the new application were duly published and also furnished to the adjacent owners.
The hearing on the new application was held on August 31, 1999. Four of the adjacent property owners spoke against granting the application. In summary, their objections were that the plaintiff's hardship was purely financial and, therefore, legally insufficient; that permitting a building on a reduced lot size would have an adverse effect on their property values; and that traffic in the area would be increased to a hazardous level.
Following the hearing, the board voted to deny the application. The reasons cited by the board members at the time of the vote were "no specific hardship was presented" and "because of the objections of the abutters." Notice of the decision was published in the newspaper on September 4, 1999. The reason given for the decision in the published notice was "because of strong objections from abutters." The chairman also sent a letter to the plaintiff advising him of the decision and stating that the reason was "strong objections from abutters."
Although not a part of the record in this case, it is undisputed that the plaintiff, purportedly in accordance with General Statutes § 8-7, caused a notice to be published in the newspaper on September 15, 1999, regarding the original approval of his application on July 27.
Based on the record and evidence presented at the hearing on this appeal, the court finds that the plaintiff is and has been the owner of the subject property at all relevant times. He is, therefore, legally aggrieved by the board's decision and has standing to appeal.
In support of his appeal, the plaintiff advances essentially two arguments: 1) that the reasons stated by the board for denial of the variance are not legitimate and are not supported by the record and 2) CT Page 8837 that the board had no authority to nullify its original decision to grant the variance.
The plaintiff first argues that the reason stated by the board for its decision, "the objections of the abutters," is not a proper basis for the board's decision, citing Basile v. Southington Zoning Board of Appeals, Superior Court, Judicial District of Hartford, Docket No. CV90 044 10 61 (Hammer, J., 1992). The court disagrees.
In the Basile case, the court held that "unsubstantiated fears" of lay people concerning possible heavier traffic have no probative force in the determination whether a special exception should be approved. The present case presents an entirely different issue, however. The Basile case concerned the issuance of a special exception, and that court noted that a board has no discretion to deny a special exception if the standards imposed by the regulations are met. That court further noted that where the regulations permit a use by special exception, there is a presumption that such use is generally in harmony with the neighborhood and will promote the general welfare. This case involves the issuance of a variance, however, not a special exception, and therefore places the board in an entirely different posture when it reviews the application and arrives at its decision.
"It is well established . . . that the granting of a variance must be reserved for unusual or exceptional circumstances." Dolan v. Zoning Boardof Appeals, 156 Conn. 426, 429, 242 A.2d 713 (1968). "An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone." Id., 430. "Accordingly, we have interpreted General Statutes § 8-6 to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan." (Internal quotation marks omitted.) Grillo v. Zoning Board of Appeals, 206 Conn. 362,368, 537 A.2d 1030 (1988). "Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." A mere economic hardship, however, is insufficient to justify a variance, Krejpcio v. Zoning Board of Appeals, 152 Conn. 657,662 (1965); and neither financial loss nor the potential for financial gain is the proper basis for granting a variance. Garibaldi v. ZoningBoard of Appeals, 163 Conn. 235, 239, (1972).
In the present case, the record reveals that a persistent theme of the CT Page 8838 objections raised by the adjacent property owners was that the plaintiff had failed to demonstrate legal hardship sufficient to justify the issuance of a variance. Specifically, the objectors argued that the plaintiffs only demonstrated hardship was the financial loss that he would suffer by limiting construction to one building in conformity with the lot size requirements of the zoning regulations. Certainly, the plaintiff presented no evidence that compliance with the lot size limitations would subject him to any unusual hardship which is different from what other property owners in the zone would experience. There is no evidence, for example, that application of the zoning regulations to his property deprives the plaintiff of any effective use of his property. Rather, the regulations simply limit the extent of development to something less than the plaintiff would wish. That is not the kind of hardship that justifies a variance of the regulations under the law.
The court finds that the generalized reason given by the board for its decision, "objections of the abutters," includes the conclusion, based on the specific arguments of the abutters, that there is insufficient hardship to justify the granting of a variance. This finding is further supported by the board's own reference to lack of hardship at the time it recorded its vote on the application.
The court agrees with the board, for the reasons stated above, that the plaintiff failed to demonstrate sufficient hardship and affirms the board's decision in that regard.
The plaintiff's second argument is that the board had no authority to reconsider and open the original decision granting the variance, which was rendered on July 27, 1999.
In Sharpe v. Zoning Board of Appeals, 43 Conn. App. 512, 526, the Appellate Court held that a decision of a zoning board of appeals becomes final upon publication in accordance with the statute and may not thereafter be opened or reconsidered. Prior to publication, a decision may be opened and reconsidered for good cause. The plaintiff argues that no good cause for the board's action has been shown in this case. The court disagrees.
Although there is no statutory or regulatory requirement that individual notice of a variance application and hearing be given to abutting and adjacent property owners, it was the practice of the board to send such notice in addition to the statutory publication. To that end, the board required an applicant to list the names on the application. The obvious purpose of the board's unofficial practice is to ensure that those who might be directly affected by the proposed variance will have actual notice of it and the opportunity to give the board the CT Page 8839 benefit of their comments on it in advance. In the present case, the plaintiff's failure to list all of the names of adjacent property owners on the application frustrated that purpose. The result was that several people who presumably would have been present at the first hearing and registered objections did not have actual notice of it and did not appear. The departure from the board's standard practice, therefore, prevented the board from hearing a full exposition of the issues at the first hearing, and that fact was plainly the major reason for opening the decision.
The objectors and the board acted promptly. The decision to open the decision and reconsider it was made the day after the vote. The plaintiff was not harmed or prejudiced in any way, therefore, by the passage of time, nor is there any evidence that he took any action in reliance on the board's decision.
The plaintiff acquiesced in the opening of the decision. Unlike the situation in the Sharpe case, where the plaintiff immediately objected to the opening of a favorable decision and refused to participate in the new hearing, the plaintiff in this case immediately submitted a new application and participated fully in the new hearing. In this regard, the plaintiff's publication of the July decision was ineffective. It was published long after the second hearing, so it cannot be construed as a timely objection to that hearing. Furthermore, the publication did not have the effect of finalizing the first decision because it was done long after the twenty-five day period for such publication had expired. This statutory time limitation is "of the essence of the thing to be accomplished." General Statutes § 8-7; Sharpe v. ZBA, supra,43 Conn. App. 525.
Based on all of the factors set forth above, the court finds that the board had the requisite good cause to open the decision rendered on July 27, 1999, and reconsider it following a complete new hearing on August 31, 1999.
For all of the foregoing reasons, the decision of the board is affirmed and the plaintiff's appeal is dismissed.
Maloney, J. CT Page 8840