[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I FACTS AND PROCEDURAL HISTORY
This is an action brought in 1997 by the then zoning officer of the town of Plainfield, Tammy S. Anderson, hereinafter "the plaintiff," pursuant to General Statutes § 8-12 seeking to enforce a cease and desist order issued to James Gallow, hereinafter "the defendant," a joint owner of premises located at 62 South Cady Lane in the Central Village section of the town of Plainfield.[1] The order, dated November 20, 1996, alleged that the defendant was in violation of the local zoning ordinance by operating a business in a residential zone. The complaint sought a temporary and permanent injunction, fines, as authorized by the local ordinance, costs, fees, expenses and reasonable attorney's fees, CT Page 4422 plus a civil penalty as provided by General Statutes § 8-12 in the amount of $2500 and such other relief as is just and equitable.
A trial was held on December 2, 7, 8, and 9, 1999. After hearing the evidence, the court (Potter, J.) found the following facts:
In July of 1993, the defendant and his wife, Claire Gallow, purchased a residence on approximately two acres of land, located on a private way (according to the deed), known as Cady Lane, in the Central Village section of the town of Plainfield. The premises are located in an RA 60 residential zone. The neighborhood is rural in character; the private way, known as Cady Lane, extends beyond the premises of the defendant, goes by the home of Randy Jernstrom and then beyond to the residence of his father and mother, Mr. and Mrs. Roland Jernstrom, where it ends. Shortly after the defendant moved in, the Jernstroms noticed that the defendant began to cut trees to make room for vehicles and equipment that he brought to the property. Over the next few years, the defendant continued to bring vehicles and equipment onto the property. In July of 1996, Mrs. Roland Jernstrom complained to the then zoning enforcement officer, Paul Yellin, that the defendant was operating a business in a residential area. She asked for an investigation.
On September 26, 1996, thirteen residents of South Cady and Cady Lane wrote to Yellin asking that he act to stop Gallow Oil Stone from operating at 62 Cady Lane. Yellin's inspection took place in October of 1996. He saw four large dump trucks, two oil tank trucks, pavement rolling equipment and a grader on the property. In addition, he saw a number of automobiles.
The zoning enforcement officer ordered that a cease and desist order be issued based upon the defendant's operation of a business in a residential zone. The order issued on November 20, 1996, and was received by the defendant on November 22, 1996. The defendant did not, within 30 days of the November 20, 1996 issuance of the cease and desist order, appeal to the zoning board of appeals.
The zoning regulations of the town of Plainfield were clear. Pursuant to § 3-21 of the Plainfield zoning regulations, single family detached dwellings and accessory uses "customarily incidental" to them are permitted in the RA-60 zone where the defendant resides on Cady Lane. The vehicles and equipment seen by Yellin and Anderson were not found to be accessory uses of a single-family dwelling.
The court found that the case law was also clear. The validity of the CT Page 4423 cease and desist order may not be contested if zoning officials seek its enforcement after a violator has failed to appeal. See Gelinas v. WestHartford, 225 Conn. 575, 595, 626 A.2d 259 (1993).[2]
Having found the defendant to be in violation of zoning regulations, the court found that injunctive relief; as requested by the plaintiff; was appropriate.
The court found that the defendant had been in violation of the zoning ordinance for several years. Although he failed to appeal, the defendant had sought to remedy the situation. On April 10, 1997, he filed an application to change the zone from residential (RA-60) to commercial. That application was denied on June 18, 1997.
On September 8, 1997, the defendant sought a home occupation permit to allow the storage of vehicles and equipment on the premises. That was also denied.
On November 10, 1997, the zoning board of appeals denied his request for a variance to conduct his business at his residence. At a subsequent meeting on December 2, 1997, the board purported to reverse itself and granted his request for a variance. This subsequent approval was never published or recorded as required by General Statutes § 8-7. Further, the propriety of the board's action had been the subject of a complaint before the freedom of information commission and subsequent appeal by the zoning board of appeals was at the time of Judge Potter's first order, still pending in the Superior Court in Hartford/New Britain. Thereafter, a mandatory injunction issued ordering the defendant, James Gallow, to remove all of his commercial vehicles, equipment and materials from the premises known as 62 Cady Lane, Central Village, Connecticut.
 Subsequent Proceedings
On April 6, 2000, the plaintiff filed a motion for contempt and an order to show cause. The plaintiff alleged that the defendant continued to store equipment and vehicles on the property. On April 24, 2000, after a hearing, the court found that the defendant had removed some thirty items from the premises but some things remained. They included two inoperable Mack trucks, a large roller and a grader. The court ordered that the remaining motor vehicles and equipment, used in the defendant's business, must be removed from the premises pursuant to the court's order February 15, 2000. In addition, testimony established that some other materials used in the business remained on the property, and the court ordered that they must also be removed. CT Page 4424
A finding of contempt was made on May 1, 2000. The defendant was to remove the remaining commercial vehicles, equipment and materials by July 1, 2000, or he would incur a civil fine of $500 per day for the violation of the court's order. Attorney's fees in the amount of $750 were awarded to the plaintiff.
Ten days later, on May 10, 2000, the defendant made an application for a writ of audit querela[3] seeking to vacate the February 15, 2000 judgment of this court because of a decision of the Superior Court,Zoning Board of Appeals of the Town of Plainfield v. Freedom ofInformation Commission, Superior Court, judicial district of New Britain, Docket No. 497915 (May 3. 2000, Satter, J.) which, Gallow claimed, approved a variance granted to him on December 2, 1997, by the Plainfield zoning board of appeals.
Again after several days of hearings, on October 12, 2000, Judge Potter denied the writ indicating: "[I]n this matter, the ZBA's actions to reconsider and reverse its earlier denial of Mr. Gallow's variance application, which was published, are similarly invalid. As the Sharp
court [in Sharp v. Zoning Board of Appeals, 43 Conn. App. 512, 523,684 A.2d 713 (1996)] acknowledged, "a balanced and persuasive statement of the law as it applies to reconsideration of decisions made by a zoning board of appeals' is contained in the Supreme Court's 1931 decision inSt. Patrick's Church Corp. v. Daniels, 113 Conn. 132 [154 A. 343] (1931) where the issue was the same as it is here — a reconsideration and reversal of the same decision. There the Court stated: `[I]t appears to be well established that a zoning board of appeals . . . should not ordinarily be permitted to review its decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding; the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence.' St. Patrick's Church Corp. v.Daniels, [supra] 113 Conn. 137-38.
"Neither the Plainfield zoning ordinance nor state statutes provide for reconsideration. Having concluded that the Sharp case is on all fours with the facts of the present case this court has not addressed the remaining issues raised in the briefs. Because Judge Satter's decision does not affect this court's decision of February 15, 2000, the application for a writ of audita querela was denied.
"This court's orders of May 2, 2000, previously stayed on June 12, 2000, are reinstated with a new compliance date of December 15, 2000, to CT Page 4424 remove remaining commercial vehicles, equipment and materials or incur a civil fine of $500 per day."
On December 1, 2000, the plaintiff filed a motion for contempt alleging that the defendant continued to store equipment, vehicles and materials on his property, and also alleging that the defendant had failed to pay counsel fees . . . The motion was filed despite the fact that the defendant had until December 15, 2000, to fully remove the items from his property. On December 11, 2000, the court "reaffirmed the prior orders".
 II DISCUSSION A The Present Proceedings
On March 2, 2001, the plaintiff filed a document entitled "Plaintiff's Third Motion for Contempt." In the first nine paragraphs, the plaintiff describes the case history. Paragraphs ten through seventeen of the motion describe conduct of the defendant, James Gallow, and his attorney commencing in October, 2000, in filing a new application with the zoning board of appeals to obtain a variance identical to the one that had been denied on June 18, 1997. Paragraph eighteen of the complaint states: "The defendant is willfully, intentionally and blatantly disregarding the Court's judgment that storage of vehicles in a residentially zoned property is illegal because he has moved his property and vehicles to property he owns on Route 12 in Plainfield." To summarize the many paragraphs of the motion for contempt, paragraph nineteen states: "These latest maneuvers of the Defendant Gallow are yet further attempts by him to willfully flout the authority and dignity of the Court in issuing its previous contempt orders." Thereafter, the plaintiff seeks a finding, not of civil contempt and imposition of the fines, but seeks: 1) a finding of criminal contempt of court by the named defendant and his attorney; 2) incarceration of the defendant and his attorney; and, 3) costs of $5,000.
 B The Evidence:
This court heard testimony on March 27 and 28, 2001. The substituted plaintiff; Jason Vincent, the present zoning enforcement officer, CT Page 4425 testified. With respect to the violation of the orders of the court regarding the removal of commercial vehicles, equipment and vehicles, from 62 Cady Lane, this court finds based on Mr Vincent's testimony, that there are two piles of dirt or road materials, approximately five feet high and seven feet around, which have not been removed from 62 Cady Lane, which the defendant, with all his equipment, could easily have removed had he elected to do so.
The plaintiff; Jason Vincent, is also concerned about five pieces of equipment which were removed from the 62 Cady Lane property and moved to other residential property of the defendant at 1046 Norwich Road, Plainfield which property is also within the same RA-60 residential zone. This court finds that the orders of Judge Potter can fairly be read in context of the entire decision to mean that the equipment, vehicles and materials were to be removed in such a manner as to avoid a continuing violation of the Plainfield zoning regulations. Any other reading would reduce the order to absurdity, e.g. the vehicles could be moved across the street within the same prohibited zone.
The zoning official testified that the vehicles and equipment at 1046 Norwich Road include a large dump truck, an orange wood chipper, a backhoe, a white pickup truck and a red pickup truck. While the attorney for the defendant attempted to elicit testimony that the equipment was there for clearing the lot, the court finds that the equipment has been there since last September or October and is not actively being used for clearing the lot. It is being stored there, by the chairman of the Plainfield zoning board of appeals, in violation of the Plainfield zoning regulations.
The balance of the zoning enforcement officer's testimony and the testimony of the other witnesses called by the plaintiff and the defendant dealt almost exclusively with the conduct of the defendant individually, his attorney, and the named defendant in his capacity as chairman of the Plainfield zoning board of appeals. A relatively small amount of testimony involved the defendant's relationship with other members of the board.
It is fair to say that the testimony of the various witnesses revealed neighborhood feuds, personality conflicts of contestants and witnesses and political polemics within the town of Plainfield. Counsel for the plaintiff; the plaintiff and the first selectman have concluded that since the 1997 application for a variance was denied, and this denial was confirmed in the year 2000 by various decisions of Judge Potter, any attempt to submit a new application for a variance to the zoning board is CT Page 4426 so patently illegal that it constitutes an attempt to circumvent Judge Potter's order and constitutes a criminal affront to the dignity of the court.
The court is mindful of the considerable time and expense to which the town of Plainfield and its citizens have been put by virtue of Gallow's litigation in this case and by the time and expense to which the town has been put in the related matter of Zoning Board of Appeals of the Town ofPlainfield v. Freedom of Information Commission, supra, Superior Court, Docket No. 497915. It may be that the case is still on appeal. Clearly, the prospect of continued litigation and expense is not viewed with enthusiasm by the town or its first selectman.
The testimony indicated that Gallow has, again, submitted a virtually identical application for variance as has been the subject of so much earlier litigation. The first selectman has issued a letter to four members of the zoning board of appeals indicating that, in the opinion of the first selectman and the town counsel, those four members have a conflict of interest and suggesting that the law prevents them from sitting on the board during a consideration of the variance, and that the board cannot even considering the variance again.[4] The letter went on to advise the board members that if the board members participate in the decision "the Town will not provide you with counsel nor indemnify you in subsequent litigation." (Exhibits #7 and 9.)
At the November 8th meeting, the chairperson at that time, Carol St. Ament, received a letter from the zoning enforcement officer indicating that the law seemed to oppose a reconsideration of an identical variance absent a change of circumstances.(Exhibit #4.) The minutes of the meeting indicate that the attorney for the town, the attorney for Gallow and the attorney for the abutting property owners all appeared, and there was spirited debate about what could or should happen to Gallow's application. It is fair to surmise that there was considerable heated discussion. Two members of the board testified they felt intimidated by the first selectmen's letter and by the conduct of the lawyers at the meeting. The attorney for the abutting landowners had a court reporter in attendance and objected to the "composition of the panel." (See Exhibit #8.) Two lawyers were telling the board not to act; Gallow's lawyer was telling them they could act, that this was not reconsideration of an application, but that this was a new application. The attorney for Mr. Gallow was telling them they should have their own lawyer. The town refused to provide one. The attorney for Gallow indicated he was withdrawing the application and demanded a panel of five members.[5]
One member raised the issue of the fact that the board meeting was not CT Page 4427 being recorded and was not open to the public. He declared his intention to read the application in to the record and start the public hearing on the variance. When the board member attempted to read it, he was stopped by the defendant, Gallow. After heated discussion, including some profanity, the matter was tabled.
Following the November meeting, the chairperson, Carol St. Ament, resigned from the commission. Richard Mercier was appointed who, apparently, was believed by the plaintiff to be politically aligned with the defendant, and thereafter the board had an equally unproductive meeting in January, 2001, with respect to the status of the application of the now chairman, James Gallow. In February, 2001, Gallow's attorney unilaterally declared the application to have been approved by default of the zoning board of appeals and published an unprecedented notice in the Norwich Bulletin to that effect. The notice was purportedly by the zoning board of appeals but was unsigned and did not indicate by whose authority it was promulgated. The validity of such an action is justifiably disputed.[6]
Based upon the foregoing proceedings and testimony, the plaintiff zoning enforcement officer seeks to have James Gallow and his attorney found to be criminally in contempt of court, incarcerated and fined. Both parties agreed in advance of trial that the case was proceeding on the basis of criminal contempt and was to be conducted under the more stringent criminal safeguards.
 C Civil vs. Criminal Contempt
Our case law classifies civil contempt as conduct directed against the rights of the opposing party; see Connolly v. Connolly, 191 Conn. 468,482, 464 A.2d 837 (1983); McTigue v. New London Education Assn.,164 Conn. 348, 352, 321 A.2d 462 (1973); while criminal contempt consists of conduct that is directed against the dignity and authority of the court. See McClain v. Robinson, 189 Conn. 663, 666, 457 A.2d 1072
(1983); Moore v. State, supra, 186 Conn. 258; Ullman v. State,230 Conn. 698, 707 (1994). Contempts of court may also be classified as either direct or indirect, "the test being whether the contempt is offered within or outside the presence of the court." 17 Am.Jur.2d, Contempt 6. A refusal to comply with an injunctive decree is an indirect contempt of court because it occurs outside the presence of the trial court. See Deming v. Bradstreet, 85 Conn. 650, 658, 84 A. 116 (1912). The CT Page 4428 question then becomes how conduct, alleged to be in contempt of a court order, that occurred outside of the trial court's presence, is proven to be a contemptuous. Established principles of both constitutional and common law are implicated in this question. See Eldridge v. Eldridge,244 Conn. 523, 529, 710 A.2d 757 (1998).
Although "whether a contempt is civil or criminal turns on the `character and purpose' of the sanction involved"; Mine Workers v.Bagwell, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); the United States Supreme Court has indicated that "the stated purposes of a contempt sanction alone cannot be determinative." Id. "[C]onclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from "the subjective intent of a State's laws and its courts' . . . but `from an examination of the character of the relief itself . . .'" (Citations omitted.) Id., 828. Accordingly, a court's power to hold a party in civil or criminal contempt is not limited by the nature of the offense. Rather, it is the nature of the relief itself that is instructive in determining whether a contempt is civil or criminal.Ullmann v. State supra, 230 Conn. 707.
In Wilson v. Cohen, 222 Conn. 591, 598-99, 610 A.2d 1177 (1992), our Supreme Court stated that criminal contempt is not a criminal offense. Nevertheless, our Supreme Court "long ago concluded that a criminal contempt proceeding should conform as nearly as possible to proceedings in criminal cases." Id. 599, see State v. Banks, 59 Conn. App. 145, 149,___ A.2d ___ (2000). In proceedings for criminal contempt, the defendant is presumed to be innocent and must be found guilty, and no contempt order will issue unless the defendant is proven guilty beyond a reasonable doubt. See id. In those for civil contempt, there is no presumption, and proof of the contempt need not be beyond a reasonable doubt. See Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419.
 D The Requested Relief
The relief requested by the plaintiff against Gallow in this proceeding is not simply the fine of up to $500 per day as set by Judge Potter. That would be a civil contempt. A contempt fine is civil if it either "coerce[s] the defendant into compliance with the court's order, [or] compensate[s] the complainant for losses sustained." (Internal quotation marks omitted.) Ullmann v. State, supra, 230 Conn. 710. The relief requested in this case is completely punitive and not remedial. The plaintiff seeks a finding of criminal contempt of court and seeks that the CT Page 4429 defendant and his attorney be jailed. The violation of any court order qualifies for criminal contempt sanctions. Practice Book § 1-21 A.
In addition to the criminal safeguards of proof beyond a reasonable doubt and a presumption of innocense, there is a limitation on the imposition of any sanction criminal or civil. "[T]he contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind." (Citations omitted; internal quotation marks omitted.) Blaydes v. Blaydes, 187 Conn. 464, 467,446 A.2d 825 (1982), Eldridge v. Eldridge, supra, 244 Conn. 533. In this case there is no clear direction from Judge Potter that the defendant was prohibited from ever petitioning the zoning board of appeals for a new hearing. That is neither directly or indirectly stated or implied in the order, and the order, as written, does not provide any basis for criminal contempt against the defendant for applying for a variance. The order was clearly designed to bring the defendant Gallow into compliance with the zoning regulations.
If the defendant failed to remove his equipment, commercial vehicles and materials from the property altogether or if he moves the equipment back on to the property at 62 Cady Lane in direct defiance of the order of the court, such conduct might be viewed as an assault upon the dignity and authority of the court.[7] "The expression "dignity of the court' proclaims a demand, to all dealing with the court, for proper respect and obedience in its function of interpreting, administering and enforcing the law within its authority to do so. See generally Brannon v. State,202 Miss. 571, 582, 29 So.2d 916 (1947)." In Re Dodson, 214 Conn. 344,349-50, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S.Ct. 247,112 L.Ed.2d 205 (1990).
In addition, "authority" can be and has been interpreted to mean the "[r]ight to exercise powers; to implement and enforce laws; to exact obedience; to command; to judge. . . . [It is] [o]ften synonymous with power." (Brackets in original.) Id., 350.
Here, the dignity and authority of the court is not threatened by the failure of Gallow to remove the two piles of miscellaneous materials from the property or the parking of some equipment on another site. The civil contempt fines as set by Judge Potter are clearly suitable to remediate any such problem that remains following this decision.
Accordingly, the defendant's motion to dismiss the plaintiff's "Third Motion for Contempt" is granted. CT Page 4430
Foley, J.