[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs Diane Dugas and Joseph Matthew Vaverchak appeal the decision of the defendant zoning and planning commission of the town of Suffield granting the application of defendant RealDev Corp. for the subdivision of property owned by Cheryl and David Petursson. The commission acted pursuant to Conn. Gen. Stats. sec. 8-26. The plaintiffs appeal pursuant to Conn. Gen. Stats. sec. 8-8. The court finds the issues in favor of the plaintiffs.
The facts essential to the court's decision are undisputed and are fully reflected in the record. Defendant RealDev filed an application for a subdivision of the property which is the subject of this appeal on January 24, 2000. RealDev proposed to create 14 residential building lots on the property, which consists of approximately 15 acres. The development would be serviced in part by a subdivision road. It would include a sanitary sewer system and a storm water run-off system, both to be constructed. Waste from the development would be conveyed to a pump station, which would be constructed, and thence, by means of a "Force Main System," to the existing town sewer system. The Force Main System would utilize a pipe suspended from a pedestrian bridge that would be constructed over an existing brook. As initially submitted, the application did not include any reservation of open space as required by the subdivision regulations. Instead, the applicant proposed to pay a fee to compensate for the lack of open space.
Although not required to do so by statute, the commission convened a public hearing, which was held on March 20, 2000. Defendant RealDev was represented by Nat Sreenath, a civil engineer and land surveyor, who presented and described the project. Gerald Turbet, the town engineer, presented a report along with recommended changes to the plans and CT Page 7644 conditions of acceptance. Members of the public appeared and stated their opposition to the project. The commission then closed the hearing and tabled consideration of the application until the next meeting of the commission on April 17, 2000.
At the meeting on April 17, the commission noted that RealDev had amended its application to include reservation of approximately 10% of the subdivision property for open space, thereby conforming to the applicable regulations. There was considerable discussion among the commission members and the town engineer concerning an agriculture buffer area, the planned construction of a structure to house an air release valve for the sewer system, and the fact that the ongoing maintenance of the development's sewer system would be the responsibility of the town. At the conclusion of the meeting, a motion to approve the application failed on a tie vote; two in favor, two opposed.
The commission did not publish notice of its decision, and RealDev did not appeal it to this court. Instead, on April 20, 2000, the chairman of the commission, defendant Douglas Viets, called a special meeting of the commission by letter to each member. The stated purpose of the meeting was "to discuss" RealDev's application; that is, the application which the commission had denied three days previously.
On April 24, 2000, the commission held a special meeting pursuant to the chairman's call. A motion to reconsider the commission's previous action denying RealDev's application was made, seconded and passed.
The commission then engaged in a lengthy discussion of the application, covering essentially the same ground that it had covered on March 20 at the public hearing and on April 17 at its meeting when the vote was taken, but in greater detail. As before, the town engineer was present and provided considerable information and advice. The meeting was adjourned and consideration of the application was put over to May 15, 2000, the next regular meeting of the commission.
At the meeting on May 15, the commission continued its discussion of the same issues it had considered previously; that is, the pedestrian bridge with the attached sewer pipe, agricultural buffers, and others. Ultimately, a motion to approve the application with certain conditions was passed by unanimous vote. The decision was duly published on May 20, 2000. It is that decision which is the subject of this appeal.
Based on evidence admitted at the hearing on this appeal, the court finds that the plaintiffs own property located within one hundred feet of the land which is the subject of the commission's decision. They are accordingly aggrieved by the decision. Conn. Gen. Stats. sec. 8-8(a)(1). CT Page 7645
In their brief to the court, the plaintiffs advance essentially three arguments in support of their appeal: (1) that the commission improperly reconsidered and reversed the decision it reached on April 17, 2000; (2) that the commission improperly accepted evidence upon which it based its decision after the close of the public hearing; and (3) that the commission failed to state reasons for granting waivers of certain subdivision regulations as required by Conn. Gen. Stats. sec. 8-26.
In Sharp v. ZBA, 43 Conn. App. 512 (1996), cited by the plaintiffs in their brief, the Appellate Court held that the board's action in opening its original decision and changing it was invalid because the original decision was final and had been published. The fact that the original decision in Sharp had been published distinguishes that case from the present case. Nevertheless, most of the controlling principles followed by the Appellate Court in Sharp are applicable to the facts of the present case.
The decision of an administrative body such as the commission is final at the time it is made, subject to reconsideration only under certain circumstances. Sharp v. ZBA, supra, 43 Conn. App. 524. Once that decision has been published, however, it is not subject to reconsideration. Id., 526. Prior to publication, in order to open a decision; that is, reconsider it, the commission must act timely and with good cause. Id. 526.
With respect to timeliness, the court in Sharp noted that the applicable statute (C.G.S. 8-7) required publication of the decision within fifteen days. Accordingly, the court concluded that, in the absence of publication, there is "a period of fifteen days between (sic) the date of decision within which the board may open its decision for good cause. . . ."
The statute applicable to the present case, Conn. Gen. Stats. sec. 8-28, establishes the same fifteen day publication time limit. Accordingly, this court concludes that, in the absence of publication, the defendant commission had fifteen days from the date of its April 17 decision to open that decision for good cause. As noted, the commission's vote to open the decision and reconsider it occurred on April 24, 2000, which was within the time limit established by the Sharp decision.
Although the action of the commission in this case may be considered to have been timely, the law also requires that the commission have some legal good cause for reconsidering the original decision. Quoting approvingly St. Patrick's Church Corp. v. Daniels, 113 Conn. 132,137-138, the Sharp court observed: CT Page 7646
 it appears to be well established that a zoning board of appeals or adjustment should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding: the result would be subject to change at the whim of members or due to the effect of influence exerted upon them. or other undesirable elements tending to uncertainty and impermanence. However, . . . [g]reat difficulty might be experienced by a hard and fast rule denying permission to rehear and modify [the board's] rulings . . . in correcting matters which were overlooked and were of slight materiality, but which were capable of speedy and practical correction . . . without prejudice to the rights of any one. . . . But the power to reconsider is not an arbitrary one and its exercise should be granted only when there is justification and good cause.
(Citations and internal quotation marks omitted. Emphasis added.) For a more recent incarnation of the rule, the Sharp court also quoted approvingly R. Fuller, 9 Conn. Practice Series: Land Use Law and Practice, Sec. 21.1:
 It is unresolved whether a land use agency can open and reconsider a decision after it has been made, but before publication of the notice of the decision. There is no land use statute allowing reconsideration, which suggests that it can only be done to correct errors or for some other extraordinary reason, in order to promote finality and certainty of decisions and to prevent attempts to influence agency members to change their minds. (Emphasis added.)
The court has reviewed the record to determine the reasons for the commission's decision on April 24, 2000, to reconsider its earlier denial of RealDev's application. The clearest indication of the basis of the April 24 decision is found in the remarks of the chairman, defendant Viets, immediately following the vote. Viets stated that the reason for the meeting and for reconsidering the application was that
it came to the Chair's attention that there are a number of concerns concerning this particular application which were not discussed at the last meeting, when we had a discussion on the CT Page 7647 application. . . . And the Chair felt that, after seeking legal counsel, that it was important to have a full and open airing of these concerns that were raised . . . since they were not part of our public discussion before. And that these concerns and issues might have a bearing on the Commission in its decision that it took on the particular application. So I would like to start the meeting back again at this particular point. I think there was several issues that had come up and in particular in regards to issues about screening, issues concerning buffers, issues concerning open space, that need to be more thoroughly explored in regards to this particular application. I know, Chet, you had some concerns concerning some of the sewer line and some of those other issues on there. . . .
Plainly, these reasons do not amount to good cause for opening the prior decision and ultimately reversing it. There was no change in the application that had been under consideration on April 17. There is no indication that there was any procedural error in the conduct of the meeting or the vote on April 17. There is no indication that the rights of any interested party had been prejudiced by the conduct of the meeting or vote on April 17. Furthermore, all of the issues that the chairman proposed to discuss on April 24 had already been discussed by the commission members, including him, on April 17 before taking the vote. Indeed, the circumstances of that vote, as revealed in the record, argue against the notion that it was unduly precipitous or inadequately considered by the members who voted. Toward the end of the meeting, the chairman stated, "I think we're getting close to a motion." He then seconded the motion to approve the application and invited further discussion. One of the members then spoke briefly in favor. The chairman then asked whether there was further discussion and, finding "there's no further discussion," called for a vote. It was that vote which resulted in the denial of the application. The fact that the chairman thereafter may have believed that those issues should be "more thoroughly explored" does not rise to the level of good cause required by the Appellate Court in Sharp to justify opening an otherwise final decision and reversing it. To the contrary, under these circumstances, that statement of the chairman, whose vote to approve the application did not prevail, clearly shows the potential danger in this case that "the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty or impermanence." Sharp v. ZBA, supra, 43 Conn. App. 523. CT Page 7648
The court's conclusion that there was insufficient good cause to open the commission's decision of April 17 and reverse it upon reconsideration makes it unnecessary to consider the plaintiffs' other arguments in support of their appeal.
The appeal is sustained. The commission's decision on reconsideration approving defendant RealDev's application is vacated, and the commission's decision of April 17, 2000, denying the application is reinstated.
MALONEY. J.